Stephanie SMITH, Plaintiff
Below–Appellant,

v.

DELAWARE STATE UNIVERSITY,
Defendant Below–Appellee.

No. 639, 2011.

Supreme Court of Delaware.

Submitted: May 28, 2012.
Decided: July 5, 2012.

Jeffrey K. Martin, Esquire (argued) of Martin & Associates P.A., Wilmington, Delaware, for Appellant.

Kathleen Furey McDonough, Esquire (argued), and Michael B. Rush, Esquire, of Potter Anderson & Corroon LLP, Wilmington, Delaware, for Appellee.

Before STEELE, Chief Justice, JACOBS, and RIDGELY, Justices.

RIDGELY, Justice:

Plaintiff–Below/Appellant Stephanie Smith appeals from the Superior Court's award of summary judgment in favor of Defendant–Below/Appellee Delaware State University ("DSU") on Smith's claims of wrongful termination under the Delaware Whistleblowers' Protection Act (the "Whistleblower Act"), of breach of the covenant of good faith and fair dealing, and of common law defamation.

Smith raises three arguments on appeal. First, Smith contends that the Superior Court erred in finding that Smith failed to present evidence that she was constructively discharged from DSU, sufficient to support a claim under the Whistleblower Act. Second, Smith contends that the Superior Court erred in failing to consider whether a threat to worsen her working environment could give rise to a claim under the Whistleblower Act. Third, Smith contends that the Superior Court erred by granting summary judgment on Smith's defamation claim based on her failure to produce any evidence of damages.

We recognize that a constructive discharge can give rise to a Whistleblower Act claim, but conclude that the Superior Court properly granted summary judgment based on the facts alleged here. Because Smith's defamation claim is governed by New York law, it is barred by New York's one-year statute of limitations. Thus, we affirm the Superior Court's grant of summary judgment in favor of DSU.

## Facts and Procedural History

Smith was employed by DSU as a manager in the Department of Public Safety. She reported to Department of Public Safety Chief, James Overton. In the summer of 2006, Belinda Baker was hired for the position of Captain at DSU. Smith believed Baker was hired primarily because she was Overton's long-time friend.

Although Baker was hired in the summer of 2006, she was not certified as a police officer under the Delaware Council of Police Training program ("COPT") until

April 2009. Under COPT regulations, a person must be certified before carrying a firearm and wearing a badge as a police officer.[1] The Delaware Code provides that University police officers who do not receive certification "do not have the authority to enforce the laws of the State."[2] In October 2006, Baker asked Smith to issue her a handgun so that she could qualify at the range. When Smith inquired with Overton about this request, Overton ordered her to issue Baker a handgun notwithstanding Baker's lack of certification.

Smith complained to Overton, and then to COPT administrator Major Harry Downes, that Baker had been permitted to carry a firearm without first receiving the necessary COPT certification. Smith testified that her relationship with Baker and Overton deteriorated after she protested Baker receiving a weapon. Overton undermined her authority and avoided her. But DSU also contended, and the Superior Court found, that Smith and DSU had problems before her complaints about the violation in October 2006. For example, Smith was upset when Overton denied her a pay raise in January 2006. Smith also resented Baker's hiring in August 2006.

In January 2007, Smith went on medical leave for reasons unrelated to her employment. Smith alleges that, prior to going on leave, she had a phone conversation with Overton during which Overton said that he would make her life "hell or "miserable" if she returned to work. Smith submitted her resignation on February 28, 2007, to be effective March 9, 2007. On March 6, 2007, she asked Overton if she could continue work with the same department as an independent consultant. At Overton's request, she worked an additional two weeks after March 9. In a later application for unemployment benefits, Smith stated:

> I left as a result of my superior placing me in a very comprising position. His wife worked on campus and began to spread untrue rumors about a fictitious relationship between myself and her husband (my boss). This began in September (actually before this). . . .

Smith alleged that this, and not anything related to Baker, was the source of her problems with Overton.

In the summer of 2008, Smith applied for employment with the New York City Department of Corrections ("NYDOC"). In an employee reference form, DSU incorrectly represented to the NYDOC that Smith had been subject to discipline. It was unclear who was responsible for the reference, but the Superior Court found that "[i]n Smith's favor, there is circumstantial evidence from which the jury could find that Overton played a role." The Superior Court further stated that "Smith is entitled to a finding here that Overton played a part in the bad reference, which may imply malice by Overton and DSU." Smith alleges that her start date with NYDOC was delayed by nine months because of this erroneous reference.

Smith filed a complaint in the Superior Court alleging a violation of the Delaware Whistleblowers' Protection Act, breach of the covenant of good faith and fair dealing, and common law defamation in connection with the employment reference. The Superior Court granted summary judgment in favor of DSU on all three claims, and denied Smith's motion for reargument. This appeal followed.

## Discussion

■ We review the Superior Court's grant of summary judgment *de novo* "to

---

1. *See generally* 1 *Del. Admin. C.* § 801.

2. 11 *Del. C.* § 8410(a).

determine whether, viewing the facts in the light most favorable to the nonmoving party, the moving party has demonstrated that there are no material issues of fact in dispute and that the moving party is entitled to judgment as a matter of law."[3]

### The Superior Court Properly Granted Summary Judgment Against Smith on her Whistleblower Act Claims

Smith first contends that the Superior Court erred in finding that Smith presented insufficient evidence of a constructive discharge to support a Whistleblower Act claim. The Superior Court concluded that "[a]lthough Smith probably can demonstrate a Whistleblower Act violation, she cannot prove that she was constructively discharged over it." Smith also contends that the Superior Court erred in failing to consider whether a threat to worsen her working environment could give rise to a claim under the Whistleblower Act.

The Whistleblower Act, at title 19, section 1703 of the Delaware Code, provides:

An employer shall not discharge, threaten, or otherwise discriminate against an employee regarding the employee's compensation, terms, conditions, location, or privileges of employment:

(1) Because the employee, or a person acting on behalf of the employee, reports or is about to report to a public body, verbally or in writing, a violation which the employee knows or reasonably believes has occurred or is about to occur, unless the employee knows or has reason to know that the report is false; or . . . .

(3) Because an employee refuses to commit or assist in the commission of a violation, as defined in this chapter; or

(4) Because the employee reports verbally or in writing to the employer or to the employee's supervisor a violation, which the employee knows or reasonably believes has occurred or is about to occur, unless the employee knows or has reason to know that the report is false. Provided, however that if the report is verbally made, the employee must establish by clear and convincing evidence that such report was made.[4]

A "violation" for purposes of the statute consists of an act or omission by the employer that is "materially inconsistent with, and a serious deviation from, standards implemented pursuant to a law, rule, or regulation promulgated under the laws of this State, . . ."[5]

■ The Whistleblower Act serves a valuable function by protecting employees who report violations of law for the benefit of the public. By protecting these employees, the statute encourages such reporting and promotes public health and safety. The Whistleblower Act also provides a check on persons in positions of authority, by ensuring that they do not take retaliatory action against subordinates who disclose misconduct.

■ The application of the constructive discharge doctrine to the Whistleblower Act is an issue of first impression for this Court. "Under the constructive discharge doctrine, an employee's reasonable decision to resign because of unendurable working conditions is assimilated to a formal discharge for remedial purposes."[6]

---

3. *State Farm Mut. Auto. Ins. Co. v. Patterson*, 7 A.3d 454, 456 (Del.2010) (quoting *Brown v. United Water Delaware, Inc.*, 3 A.3d 272, 275 (Del.2010)).

4. 19 *Del. C.* § 1703.

5. 19 *Del. C.* § 1702(6).

6. *Suders*, 542 U.S. at 141, 124 S.Ct. 2342 (citing 1 B. Lindemann & P. Grossman, Employment Discrimination Law, 838–839 (3d ed. 1996)) ("Under the constructive dis-

To prevail, the employee must show "working conditions so intolerable that a reasonable person would have felt compelled to resign.' "[7] A mere hostile work environment, without more, is insufficient.[8] This Court has recognized that an employee's constructive discharge may support a claim of breach of the implied covenant of good faith and fair dealing.[9]

■ We hold that an employee who is constructively discharged can pursue a claim under the Whistleblower Act, on the same basis as if she had been formally discharged. The Whistleblower Act protects employees who are "discharge[d], threaten[ed], or otherwise discriminate[d] against." By recognizing the Act's application in cases of constructive discharge, we respect the Act's salutary purpose of protecting employees who are forced to resign due to unendurable working conditions. As one state court reasoned in determining that constructive discharge satisfied the "termination" element of its whistleblower act, "[t]he legislature could not have intended to provide a cause of action to employees who were fired for reporting violations of the law, while at the same time excluding employees who were coerced into resigning."[10] The protections of the Whistleblower Act apply with equal force to those who have been constructively discharged.

■ Although the constructive discharge doctrine may provide grounds for a Whistleblower Act claim, the Superior Court properly held that Smith failed to offer sufficient evidence of a constructive discharge in this case. To survive a motion for summary judgment, the plaintiff must present sufficient evidence from which a rational trier of fact could find in her favor.[11] This Court will not draw unreasonable inferences in favor of the non-moving party.[12] Thus, where the plaintiff's testimony is so inconsistent that no reasonable juror could accept it, summary judgment may be appropriate. As the Second Circuit has recognized in applying the federal counterpart to Rule 56, "summary judgment may be granted when a plaintiff's testimony is largely unsubstantiated by direct evidence and is replete with inconsistencies and improbabilities that no reasonable juror would undertake the sus-

charge doctrine, an employee's reasonable decision to resign because of unendurable working conditions is assimilated to a formal discharge for remedial purposes.").

7. *Rizzitiello v. McDonald's Corp.*, 868 A.2d 825, 832 (Del.2005) (quoting *Pennsylvania State Police v. Suders*, 542 U.S. 129, 147, 124 S.Ct. 2342, 159 L.Ed.2d 204 (2004)).

8. *Id.*

9. *Id.* at 831.

10. *Univ. of Texas Medical Branch at Galveston v. Hohman*, 6 S.W.3d 767, 773 (Tex.App. 1999).

11. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (explaining that the inquiry at the sum-

mary judgment stage "is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact *because they may reasonably be resolved in favor of either party.*") (emphasis added); *Cerberus Intern., Ltd. v. Apollo Mgmt., L.P.*, 794 A.2d 1141, 1150 (Del.2002) (adopting *Anderson's* approach and holding that "trial court must determine whether the plaintiffs on the summary judgment record proffered evidence from which any rational trier of fact could infer that plaintiffs have proven the elements of a *prima facie* case by clear and convincing evidence").

12. *Health Solutions Network, LLC v. Grigorov*, 2011 WL 443996, at *2 (Del. Feb. 9, 2011) (citing *Deuley v. DynCorp Int'l, Inc.*, 8 A.3d 1156, 1160 (Del.2010)).

pension of disbelief necessary to credit the plaintiff's allegations."[13]

■ Here, the Superior Court properly concluded that, even assuming the facts alleged by Smith were true, no rational trier of fact could find in Smith's favor. First, to state a claim for constructive discharge for purposes of the Whistleblower Act, a plaintiff must show that the intolerable conditions resulted from the plaintiff's reporting of a violation. Here, the violation that allegedly led to the intolerable conditions-the issuance of a firearm to Baker-occurred on October 26, 2006. But, many of the alleged conditions predated that event. Specifically, in support of her Whistleblower Act claim, Smith alleged that (1) she was denied a pay increase in early 2006; (2) she was not involved in Baker's hiring process in August 2006, as she typically was for new hires; and (3) following a September 29, 2006 meeting, Overton began meeting with her less often. Even if those events are taken as true, no rational juror could conclude that they resulted from Smith's reporting of a violation in October.

Moreover, Smith's conduct after submitting her resignation letter is inconsistent with the gravamen of her complaint—that intolerable conditions forced her to resign. There is no dispute that Smith sought a consulting job with the same department at DSU after she submitted her resignation letter. Smith's application for unemployment benefits also belies any factual account that would support her Whistleblower Act claim. In her application, Smith alleged that the worsening work conditions—Overton's change of working style without consulting Smith and his reversal of a sanction that he ordered her to impose—resulted from rumors that she and Overton were in a romantic relation-

ship. She did not tie the working conditions to anything relating to Baker.

■ In deciding a motion for summary judgment, courts are permitted to consider that the plaintiff's testimony is self-contradictory and unsupported by other evidence, such that no rational juror could find in the plaintiff's favor. Here, Smith's testimony was the primary evidence offered in support of her Whistleblower Act claim. And yet, her conduct and statements were so inconsistent that no rational trier of fact could have found in her favor. The Superior Court did not err in granting DSU summary judgment on Smith's Whistleblower Act claim. Thus, Smith's first and second arguments on appeal lack merit.

### Smith's Defamation Claim

In her opening brief, Smith contends that the Superior Court erred by granting summary judgment on her defamation claim because of Smith's inability to produce a witness affidavit regarding damages. In supplemental briefing submitted at the direction of this Court, Smith also argues that DSU's conduct satisfied the elements of a defamation claim as a libelous statement that is actionable *per se*, without proof of damages or special harm.

### The Issue of Whether Proof of Damages Was Necessary Was Not Fairly Presented to the Superior Court or to this Court on Appeal

■ Smith contends that the sufficiency of her defamation claim was an issue put squarely before the Superior Court. She points to DSU's motion for summary judgment, arguing that Smith suffered no harm from the negative reference and thus could not state a claim for defamation.

---

**13.** *Gardine v. Maxwell,* 2010 WL 808995, at *5 (S.D.N.Y. Mar. 9, 2010) (citing *Jeffreys v.* *City of New York,* 426 F.3d 549, 555 (2d Cir.2005)).

Smith also contends that, even if the issue was not fairly presented below, this Court should consider the issue under the "plain error" and "interests of justice" doctrines. DSU responds that the issue was not fairly presented to the Superior Court, and that the plain error doctrine has no application in this case.

■ Supreme Court Rule 8 provides that "Only questions fairly presented to the trial court may be presented for review; provided, however, that when the interests of justice so require, the Court may consider and determine any question not so presented."[14] Thus, this Court may excuse a waiver "if it finds that the trial court committed plain error requiring review in the interests of justice."[15] We have applied the doctrine of plain error to civil as well as criminal cases, and have not limited the doctrine to constitutional claims.[16] When reviewing for plain error, "the error complained of must be so clearly prejudicial to substantial rights as to jeopardize the fairness and integrity of the trial process."[17] "[T]he doctrine of plain error is limited to material defects which are apparent on the face of the record; which are basic, serious and fundamental in their character, and which clearly de-prive an accused of a substantial right, or which clearly show manifest injustice."[18]

■ Under a similar rule of law, this Court generally will not review legal issues on appeal that are not fully and fairly presented in the opening brief.[19] We have recognized an "interests of justice" exception to this requirement, however, and may allow for supplemental submissions on the disputed issue.[20]

Here, the issue of whether Smith needed to present evidence of causation and damages at the summary judgment stage was not fairly presented to the Superior Court below. On its motion for summary judgment, DSU argued that Smith had not established causation or damages.[21] Smith argued in response that an adequate offer of proof had been made on these elements.[22] Smith never argued that these elements are not required to state a claim for libel in the first place. Nor did Smith make such arguments in her opening brief on appeal. Rather, Smith argued that, as a question of fairness, she should have not been required to provide an affidavit to establish damages at the summary judgment stage. The issue was not raised properly below or on appeal, and the inter-

14. Del.Supr. Ct. R. 8.

15. *Turner v. State*, 5 A.3d 612, 615 (Del.2010) (quoting *Monroe v. State*, 652 A.2d 560, 563 (Del.1995)).

16. *Duphily v. Delaware Elec. Coop.*, 662 A.2d 821, 832 (Del.1995) (applying plain error doctrine to claim of inconsistent jury findings in negligence case) (citing *Culver v. Bennett*, 588 A.2d 1094, 1099 (Del.1991)).

17. *Wainwright v. State*, 504 A.2d 1096, 1100 (Del.1986).

18. *Id.*

19. *Proctor v. Bunting*, 797 A.2d 671, 672 (Del. 2002) (citing *Murphy v. State*, 632 A.2d 1150, 1152 (Del.1993)); Supr. Ct. R. 14(b)(iv), (vi).

20. *See Turnbull for Turnbull v. Fink*, 644 A.2d 1322, 1324–25 (Del.1994) (permitting amendment of opening brief in interests of justice to allow argument on constitutional claim).

21. Defendant's Motion for Summary Judgment, at 4, *Smith v. Delaware State University*, No. 09C–12–101 ("Plaintiff has suffered no harm because she was nonetheless offered a job with the City of New York.").

22. Plaintiff's Response to Defendant's Motion for Summary Judgment, at 4, *Smith v. Delaware State University*, No. 09C–12–101 ("Plaintiff has established that she was harmed by the erroneous reference completed by DSU stating that she had disciplinary issues.").

ests of justice do not require us to review it.

### Even if We Were to Consider the Issue in the Interests of Justice, Smith's Defamation Claim Is Barred by the New York Statute of Limitations

 On appeal, DSU argued that Smith's defamation claim is governed by New York law, and that New York's one-year statute of limitations thus bars Plaintiff's defamation claim. It is undisputed that the choice of law issue was not presented to the Superior Court below. We have held, however, that an appellee "is entitled to argue any theory in support of the judgment in its favor, even if that theory was not relied upon in the decision on appeal." [23]

DSU correctly contends that New York law governs Smith's defamation claim. When conducting a choice of law analysis, Delaware courts generally rely on the Restatement (Second) of Conflicts (the "Restatement").[24] Section 149 of the Restatement provides:

> In an action for defamation, the local law of the state where the publication occurs determines the rights and liabilities of the parties, except as stated in § 150, unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the occurrence and the

parties, in which event the local law of the other state will be applied.[25]

Here, publication occurred in New York, where the NYDOC received the negative employment reference from DSU.

Under 10 *Del. C.* § 8121, where a cause of action arises outside of Delaware, an action cannot be brought in Delaware after the expiration of the shorter of the two states' statutes of limitation.[26] New York's statute of limitations for a defamation action is one year; Delaware's is two years.[27] Accordingly, New York's statute of limitations controls.

Under New York law, the limitations period for a claim of libel begins to run on the date of publication.[28] Here, the copy of the reference form produced indicates that NYDOC received the publication in September 2008. Plaintiff's counsel also wrote to DSU's counsel regarding the negative reference form on December 4, 2008, indicating that NYDOC had received it prior to that date. Smith filed her complaint alleging defamation on December 8, 2009. Thus, Smith's filing of the defamation claim was untimely.

### Conclusion

The judgment of the Superior Court in favor of DSU is **AFFIRMED.**

---

23. *Tickles v. PNC Bank*, 703 A.2d 633, 636 (Del.1997) (citing *Haley v. Town of Dewey Beach*, 672 A.2d 55, 58–59 (Del.1996)).

24. *See Sinnott v. Thompson*, 32 A.3d 351, 354 (Del.2011).

25. Restatement (Second) of Conflict of Laws § 149 (1971). Section 150 has no application in this case.

26. 10 *Del. C.* § 8121 ("Where a cause of action arises outside of this State, an action

cannot be brought in a court of this State to enforce such cause of action after the expiration of whichever is shorter, the time limited by the law of this State, or the time limited by the law of the state or country where the cause of action arose, for bringing an action upon such cause of action.")

27. N.Y. C.P.L.R. § 215(3); 10 *Del. C.* § 8119.

28. *Fleischer v. Institute For Research in Hypnosis*, 57 A.D.2d 535, 535, 394 N.Y.S.2d 1 (N.Y.App.Div.1977).