# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

# IN AND FOR NEW CASTLE COUNTY

PAULINE ADDISON, )
)
              Plaintiff, )
)
     v. )
                          ) C.A. No. N13C-05-304 MMJ
EAST SIDE CHARTER SCHOOL OF )
WILMINGTON, INC., )
)
              Defendant. )
)

Submitted: August 20, 2014
Decided: September 19, 2014

On Defendant's Motion for Summary Judgment
**GRANTED**

## OPINION

Timothy J. Wilson, Esquire (Argued), The Wilson Firm, LLC, Attorney for Plaintiff

Marc S. Casarino, Esquire (Argued), Sean A. Meluney, Esquire, White and Williams LLP, Attorneys for Defendant

**JOHNSTON, J.**

# FACTUAL AND PROCEDURAL CONTEXT

For the purposes of this Motion for Summary Judgment, the Court will set forth the facts in the light most favorable to the non-moving party, in this case the plaintiff.

Plaintiff Pauline Addison ("Addison") filed this lawsuit against Defendant East Side Charter School of Wilmington ("East Side") on May 29, 2013. Addison alleges that her employment with East Side was terminated as a result of her refusal to cover up sexual misconduct that occurred between students. Addison claims her termination violates the Delaware Whistleblowers' Protection Act, 19 *Del. C.* §§ 1701 et seq. ("Whistleblowers' Act"), and that her termination also gives rise to a claim for Breach of the Covenant of Good Faith and Fair Dealing. Discovery was completed on April 17, 2014. On May 8, 2014, East Side filed this Motion for Summary Judgment. Oral argument was heard on August 20, 2014.

## *The Parties*

Since its inception in 1997, East Side has operated as a charter school for inner city students within the City of Wilmington. Also in 1997, Addison began her employment with East Side. Addison has served East Side in several different capacities. At the time of the alleged cover up and termination, Addison was working at East Side as a para-educator. As a para-educator, Addison's responsibilities were to assist Patricia King ("King"), a teacher, in the care for and

instruction of a classroom of students. During this time East Side was led by Principal Dr. Lamont Browne ("Browne"), Assistant Principal Latesha Laws ("Laws), and Dean of Discipline Andre Chin ("Chin") (collectively "East Side Leadership").

### Underlying Incident

On April 20, 2012, Addison was assisting King in the classroom. At some point King was required to leave the classroom. Addison was left alone to read a book to the students. During this reading time an underage male student ("ZZ") put his hands down the pants of an underage female student ("AA").[1] AA informed Addison about ZZ's actions and Addison immediately separated the two. As Addison was escorting ZZ out of the classroom, Addison encountered Chin in the hallway. Addison informed Chin about the situation and Chin took control of ZZ. Chin then instructed Addison to go to the office to write a report about the incident and to call the children's parents.

After completing the written report, Addison gave it to Chin. Upon King's return to the classroom, Addison informed King about the incident. Addison then called AA's mother and left her a message about the incident. Days later AA's mother spoke with Addison to confirm that the incident had occurred the way the mother understood it. At this point, no one from the East Side Leadership had

---

[1] AA and ZZ will be used to keep the names of the underage children confidential.

2

spoken to AA's mother. Additionally, Addison had not told anyone on East Side Leadership that she had spoken to AA's mother. The incident was not reported to the police or the Delaware Department of Education.

Eventually AA's mother came to the school to discuss the incident. AA's mother was upset that she had only been in contact with Addison, and not any members of East Side Leadership. During this meeting East Side Leadership told AA's mother that they attempted to call her several times on the day of the incident and that King even sent a note home with AA. AA's mother informed the administration that she had not received any calls, messages, or notes. King was present during this meeting, Addison was not.

Immediately following the meeting with AA's mother, East Side Leadership brought Addison in for a meeting. Laws questioned Addison about whether she had filled out a report. Chin explained that Addison had given the report to him as requested. During this meeting East Side Leadership expressed its dismay with Addison that she had spoken with AA's mother but did not disclose it to anyone in East Side Leadership.

Prior to the incident with ZZ and AA, on March 29, 2012, Addison completed an intent to return to work form for East Side. This form expressed Addison's intent to return to the same position in King's class for the next school year. On May 15, 2012, Addison amended her intent to return to work form.

3

Addison indicated that she would prefer a different assignment if available, but if not, then she would stay with King.

On June 5, 2012, Addison had a meeting with Browne regarding her amended intent to return to work form. Addison and Browne discussed Addison's poor working relationship with King. The incident between ZZ and AA was not discussed. At the end of the meeting Addison placed her work badge on Browne's desk and walked out of the office. Addison did not return to work for the remainder of the school year.

## STANDARD OF REVIEW

Summary judgment is granted only if the moving party establishes that there are no genuine issues of material fact in dispute and judgment may be granted as a matter of law.[2] All facts are viewed in a light most favorable to the non-moving party.[3] Summary judgment may not be granted if the record indicates that a material fact is in dispute, or if there is a need to clarify the application of law to the specific circumstances.[4] When the facts permit a reasonable person to draw only one inference, the question becomes one for decision as a matter of law.[5]

---

[2] Super. Ct. Civ. R. 56(c).

[3] *Hammond v. Colt Indus. Operating Corp.*, 565 A.2d 558, 560 (Del. Super. 1989).

[4] Super. Ct. Civ. R. 56(c).

[5] *Wootten v. Kiger*, 226 A.2d 238, 239 (Del. 1967).

The Court will not draw unreasonable inferences in the favor of the non-moving party.[6] Courts are permitted to consider a plaintiff's testimony to be self-contradictory and not supported by other evidence in the record, such that no rational juror could find in the plaintiff's favor.[7] Therefore, a plaintiff's testimony must be substantiated by direct evidence found in the record.[8] Testimony that is "replete with inconsistencies and improbabilities that no reasonable juror would undertake the suspension of belief necessary to credit the plaintiff's allegations," will not survive summary judgment.[9] As a result, if the non-moving party bears the burden of proof at trial, yet "fails to make a showing sufficient to establish the existence of an element essential to that party's case," then summary judgment may be granted against that party.[10]

## ANALYSIS

### Whistleblowers' Act Claim

The Whistleblowers' Act was enacted to protect employees who report violations of law for the benefit of the public.[11] Under this statute, an employer is prevented from discharging, threatening, or otherwise discriminating against an

---

[6] *Smith v. Delaware State Univ.*, 47 A.3d 472, 477 (Del. 2012).
[7] *Id.* at 478.
[8] *Id.* at 477.
[9] *Id.* at 477-78.
[10] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).
[11] *Smith*, 47 A.3d at 476.

employee regarding the employee's compensation, terms, conditions, location or privileges of employment in any of the four following occurrences:

(1) The employee, or a person acting on behalf of the employee, reports or is about to report to a public body, verbally or in writing, a violation which the employee knows or reasonably believes has occurred or is about to occur, unless the employee knows or has reason to know that the report is false; or

(2) An employee participates or is requested by a public body to participate in an investigation, hearing, or inquiry held by that public body, or a court action, in connection with a violation as defined in this chapter; or

(3) An employee refuses to commit or assist in the commission of a violation, as defined in this chapter; or

(4) The employee reports verbally or in writing to the employer or to the employee's supervisor a violation, which the employee knows or reasonably believes has occurred or is about to occur, unless the employee knows or has reason to know that the report is false. Provided, however that if the report is verbally made, the employee must establish by clear and convincing evidence that such report was made.[12]

Success on a claim brought under the Whistleblowers' Act requires proof of four elements: (1) the employee engaged in a protected whistleblowing activity; (2) the accused official knew of the protected activity; (3) the employee suffered an adverse employment action; and (4) there is a causal connection between the

---

[12] 19 *Del. C.* § 1703(4).

whistleblowing activity and the adverse action.[13]  For purposes of this motion, only the first and fourth elements will be discussed.

### *Parties' Contentions*

Addison contends that East Side's failure to report the incident to the Department of Education constitutes a violation under the Whistleblowers' Act. Addison argues that East Side's anti-bullying policy is a sufficient standard to support the finding of a violation under the Whistleblowers' Act.  Addison argues East Side's anti-bullying policy was implemented pursuant to 14 *Del. C.* § 4112D, Delaware's school bullying prevention statute, which required Browne to report the incident to the Department of Education.  Addison further argues that East Side attempted to induce her to cover up the incident.  Finally, Addison argues that her refusal to cover up the incident was the primary basis for her termination as an East Side employee.

East Side disputes Addison's characterization of the incident, arguing that it would not be considered reportable under East Side's anti-bullying policy. Additionally, East Side contends a violation did not occur in this case because the Whistleblowers' Act only protects employees who report illegalities committed by an employer.  Finally, East Side argues that Addison was not terminated by

---

[13]  19 *Del. C.* § 1703.

7

Browne, and that even if she were, her termination was not causally related to the incident between ZZ and AA.

### *Addison Did Not Participate in Protected Whistleblowing Activity*

To prove the existence of protected whistleblowing activity Addison first must show that a violation of the Whistleblowers' Act occurred. Under the Whistleblowers' Act, a violation is defined as an act or omission by an employer, or an agent thereof, "that is materially inconsistent with, and a serious deviation from, standards implemented pursuant to a law, rule, or regulation, promulgated under the laws of this State…"[14]

As a preliminary matter, the Court finds that the misbehavior of ZZ towards AA cannot be used to constitute a violation claim under the Whistleblowers' Act. The Whistleblowers' Act specifically defines a violation as an "act or omission by an employer."[15] It is clear that the focus of the statute is on misbehavior of the employer.

In this case, the actual incident involving ZZ and AA could not be a violation. Addison conceded during her deposition that no one employed by East Side committed any inappropriate touching of AA. Accordingly, this misbehavior is not a violation because no employee of East Side was involved.

---

[14] 19 *Del. C.* § 1702(6)(a).
[15] *Id.*

The Court also finds that Addison's report of the incident to Chin does not give rise to a claim under the Whistleblowers' Act. At the time of Addison's report to Chin, East Side had not taken any actions regarding the incident. Again, East Side, as the employer, had not committed the requisite act or omission to be considered a violation. Therefore, Addison must point to some specific act or omission by East Side that occurred subsequent to the incident to succeed on her claim.

The Court finds Addison's assertion -- that East Side's anti-bullying policy required a report to the Department of Education -- to be merely speculative. Addison testified at deposition that at the time of the incident she was not aware of any statutory duty requiring East Side Leadership to further report the incident. Additionally, Addison did not make any outside inquiries or reports concerning the incident until after her employment with East Side ended and she retained counsel. Employee actions subsequent to termination ordinarily cannot be the basis for a valid whistleblower claim.

Moreover, the Whistleblowers' Act is a shield to protect employees who report employers who engage in activity that is illegal, or activity tending to be more on the side of illegalities.[16] In this instance, East Side's failure to report to the Department of Education was not in violation of any legal obligation. First,

---

[16] *Smith*, 47 A.3d at 476.

Chin conducted an investigation after the incident. Second, after concluding the investigation, Chin did not believe ZZ's actions rose to the level of conduct covered by the anti-bullying policy. Third, based on Chin's investigation and Addison's written report, Browne and the rest of East Side Leadership did not believe the incident invoked the anti-bullying policy. The Court is satisfied that the conclusions of East Side Leadership were reasonable. The steps taken following the incident also were reasonable, and do not indicate any improper motives or illegal actions by East Side.

Further, the Court finds that the undisputed facts do not support a reasonable inference that there was a cover up. The facts in the record that Addison relies on to support the alleged cover up only can be reasonably attributed to Addison's failure to communicate effectively with East Side Leadership. Following the incident, Addison was aware that East Side Leadership was attempting to inform AA's mother about the incident. However, East Side Leadership did not become aware that Addison had spoken to AA's mother until AA's mother came in for a meeting with Chin, Laws, and King.

Prior to that meeting, East Side made several attempts to make the facts of the incident known to AA's mother. Addison testified that immediately following the incident Chin instructed her to go to the office and write a report outlining the facts as they happened. Addison also testified that Chin instructed her to call AA's

mother to inform her of the incident. Addison did call AA's mother, and left her a message. Several days later Addison actually spoke with AA's mother, confirming to her that the incident occurred. During this time Addison did not inform anyone in East Side Leadership that she had actually spoken to AA's mother regarding the incident.

Addison's only evidence of an alleged cover up is Addison's own testimony that Laws told Addison to get the story straight to protect the school. However, Addison failed to provide further detail about the supposed lie Laws encouraged her to spread. Instead, Addison relied on a subjective interpretation of Laws' comment to mean that Laws was telling Addison to lie about the facts of the incident. Additionally, Addison did not present any evidence that the facts of the incident or East Side's handling of the incident were not discussed at the meeting with AA's mother. Nor did Addison provide evidence that King did not send a note home with AA to give to her mother the day after the incident. Finally, there is no evidence that anyone directed Addison not to report the incident to any person or legal authority.

Considering the totality of the circumstances, an alleged cover up is not a reasonable inference. There is no evidence in the record that shows East Side Leadership was trying to hide the facts of the incident from AA's mother.

11

Therefore, the Court finds that Addison did not participate in protected whistleblowing activity.

### No Causal Connection between Alleged Termination and Whistleblower Activity

Assuming, *arguendo*, Addison did engage in protected whistleblower activity, Addison still must show a causal connection between that whistleblowing activity and the alleged adverse employment action. Addison has the burden to show that the *primary* basis for the alleged termination was Addison's protected whistleblowing act.[17] For the purposes of this motion only, the Court will assume that Addison was terminated from her employment with East Side.

The Court finds there are certain undisputed facts surrounding the timing and reasons for Addison's termination. Prior to the incident between ZZ and AA, Addison filled out an intent to return to work form indicating her desire to return to King's room the following school year. Soon after the incident, Addison amended her intent to return form asking that she be moved to another classroom if possible. Addison testified that her working relationship with King had deteriorated, which prompted the amended intent to return form. On June 5, 2012, following the amendment, Addison had a meeting with Browne regarding her employment at the school. The incident between ZZ and AA was never discussed at the meeting. At

---

[17] 19 *Del. C.* § 1708; *see also Smith v. Delaware State Univ.*, 2011 WL 5843625, at *1 (Del. Super.), *aff'd*, 47 A.3d 472 (Del. 2012).

the end of the meeting Addison placed her badge on Browne's desk and did not return to work for the remainder of the school year.

In *Smith v. Delaware State University*,[18] this Court granted summary judgment in favor of the employer on an employee's whistleblower claim. The Court determined that there was no evidence of actual retaliatory conduct by the employer. The Court noted that the employee did not develop the whistleblower theory until well after being separated from employment.

The facts in this case are analogous to those in *Smith*. The Court finds that Addison's termination was not in retaliation for reporting a violation of East Side. The record evidence demonstrates that Addison's amendment to her intent to return form was made because of the deteriorating work relationship between Addison and King. There is nothing to suggest that it was a retaliatory act by East Side. Further, the lack of discussion about the incident between Browne and Addison does not support the allegation that Addison's termination was in retaliation for her role in the incident. As in *Smith*, it appears from the record that Addison's whistleblower claim was completely undeveloped until well after her employment with East Side ended -- when Addison retained counsel.

Addison also testified that King continually made comments to Addison concerning her questioning of East Side Leadership's handling of the incident.

---

[18] 2011 WL 5843625, at *1-2 (Del. Super.).

13

However, there is no evidence in the record that King had hiring or firing authority for East Side. The Court finds as a matter of law that the alleged comments of a supervising co-worker are not sufficient to causally connect Addison's termination and her purported whistleblowing activity.

Therefore, the Court finds there is no causal connection between Addison's alleged termination and the alleged whistleblower activity.

## Breach of the Covenant of Good Faith and Fair Dealing Claim

In Delaware, "there is an implied covenant of good faith and fair dealing in every employment contract made."[19] The covenant of good faith and fair dealing limits at-will employment in very few instances.[20] These instances, known as the *Pressman* categories, are: (1) where the termination violates public policy; (2) where the employer misrepresented an important fact and the employee relied thereon either to accept a new position or remain in a present one; (3) where the employer used its superior bargaining power to deprive an employee of clearly identifiable compensation related to the employee's past service; and (4) where the employer falsified or manipulated employment records to create fictitious grounds for termination.[21] Here, only *Pressman* categories one and four are at issue.

---

[19] *Jordan v. Town of Milton*, 2013 WL 105319, at *12 (D. Del.).
[20] *Shomide v. ILC Dover, Inc.*, 521 F.Supp.2d 324, 333 (D. Del. 2007).
[21] *Lord v. Souder*, 748 A.2d 393, 400 (Del. 2000) (citing *E.I. DuPont de Nemours and Co. v. Pressman*, 679 A.2d 436, 441 (Del. 1996)).

14

### Parties' Contentions

Addison argues that East Side breached the covenant of good faith and fair dealing because East Side's termination of Addison violates public policy; and that East Side falsified employment documents. East Side disputes Addison's claims, arguing no employment records were falsified, and that Addison's termination does not violate public policy because East Side did not engage in any illegal conduct. East Side also argues that Addison's claim for breach of the covenant of good faith and fair dealing should be dismissed because it is duplicative of Addison's claim under the Whistleblowers' Act.

### There is Insufficient Evidence to Sustain Pressman Public Policy Claim

A *Pressman* public policy claim requires that a "clear mandate of public policy be threatened by the termination."[22] "As a result an employee must assert a public interest recognized by some legislative, administrative, or judicial authority, and the employee must occupy a position with responsibility for that particular interest."[23] In Delaware, only cases where an employee questions the legal propriety of the employer's conduct will satisfy the *Pressman* public policy

---

[22] *Jordan*, 2013 WL 105319, at *12 (internal quotations omitted).
[23] *Id.*

standard.[24] Employees questioning ethical impropriety by an employer do not satisfy *Pressman*.[25]

For example, in *Paolella v. Browning-Ferris, Inc.*, the Court denied summary judgment because the plaintiff presented sufficient evidence that Browning-Ferris created a fraudulent billing scheme, instructed the plaintiff to lie to customers, and fabricated weigh tickets.[26] The Third Circuit held that if these facts were proven, they would constitute a violation of Delaware's theft by false pretenses statute.[27] Thus, the *Pressman* public policy exception was applicable.[28]

Conversely, in *Jordan v. Town of Milton*, summary judgment was granted where the plaintiff testified at a pre-termination hearing that the Chief of Police allegedly altered officers' time sheets.[29] The Court reasoned that the plaintiff's termination did not satisfy the *Pressman* public policy standard because no criminal charges were pursued against the Chief of Police, and it was not clear that the Chief of Police's conduct was illegal.[30]

Here, consistent with *Jordan*, the Court finds that Addison has not satisfied the *Pressman* public policy standard. As discussed under Addison's

---

[24] *Paolella v. Browning-Ferris, Inc.*, 158 F.3d 183, 191 (3d. Cir. 1998).
[25] *Id.*
[26] *Id.* at 188.
[27] *Id.* at 192.
[28] *Id.*
[29] *Jordan*, 2013 WL 105319, at *13.
[30] *Id.*

Whistleblowers' Act claim, there is no clear record evidence suggesting that East Side's conduct following the incident was illegal. Nor were any criminal charges pursued against East Side. Therefore, the concerns surrounding East Side's handling of the incident are more ethical than legal.

The Court also finds Addison's *Pressman* public policy claim to be duplicative of her claim under the Whistleblowers' Act. When a claim for breach of the covenant of good faith and fair dealing is based on allegations of violating public policy, it cannot survive where it is preempted by a specific statute that grants relief.[31] In *Shomide v. ILC Dover, Inc.*, the plaintiff claimed a violation of public policy because he was allegedly terminated as a result of his nationality and race.[32] However, the Court precluded the plaintiff's recovery as a violation of public policy, holding that the exclusive remedy for race discrimination in employment lies with the Delaware Discrimination Employment Statute.[33]

Here, Addison contends her termination by East Side violates public policy because it was done in response to Addison's report of the incident between ZZ and AA. The Court finds Addison's claim to be indistinguishable from her claim under the Whistleblowers' Act. As a result, Addison is precluded from recovering

---

[31] *Crawford v. George & Lynch, Inc.*, 2012 WL 2674546, at *7 (D. Del.).
[32] *Shomide v. ILC Dover, Inc* 521 F.Supp.2d 333.
[33] *Id.*

under a theory of violation of public policy because the sole remedy for the misconduct alleged in this case is found in the Whistleblowers' Act.

Therefore, the Court finds that Addison's alleged termination does not violate public policy.

***There is Insufficient Evidence to Sustain Pressman Falsification Claim***

A *Pressman* falsification claim requires a showing that an employer falsified or manipulated an employment record to create fictitious grounds to terminate employment.[34] Even if an employer gives a false reason for an employee's layoff, an employee may not recover under *Pressman* unless the employer actually falsifies or manipulates employment records.[35]

Here, Addison alleges East Side falsified or manipulated three documents: (1) the incident report filled out by Addison immediately following the incident; (2) East Side's response to Addison's application for unemployment benefits; and (3) East Side's position statement to the Department of Labor in response to Addison's Charge of Discrimination. The Court will discuss the two latter documents first.

The Court finds that East Side's responses to the application of unemployment benefits and position statement to the Department of Labor do not

---

[34] *Shomide*, 521 F.Supp.2d at 334.
[35] *Id.*

18

satisfy *Pressman*. It is clear from the record these documents were not created to serve as the basis for Addison's termination, nor were they created prior to Addison's termination pursuant to a scheme to have Addison terminated wrongly. Rather these documents were created after Addison's employment with East Side ended, and were in response to Addison's affirmative application for unemployment and charge of discrimination.

The Court also finds the alleged falsification or manipulation of Addison's incident report to be insufficient to satisfy the *Pressman* standard. As discussed, the Court finds no causal connection between the incident involving ZZ and AA and Addison's termination. Addison was terminated because of her poor working relationship with King, and not because of the incident. As a result, Addison cannot show that the alleged falsifications or manipulations were made to create fictitious grounds to terminate Addison's employment. Therefore, any falsification or manipulation of Addison's incident report is irrelevant to the *Pressman* claim.

Therefore, the Court finds that any alleged falsifications or manipulations by East Side do not constitute a breach of the covenant of good faith and fair dealing.

## CONCLUSION

The Court finds that no issue of material fact exists to prevent the Court from granting summary judgment. Addison has failed to meet her burden of proving that East Side violated the Whistleblowers' Act. The Court finds Addison

19

did not engage in whistleblowing activity, nor is there a causal connection between the incident and Addison's alleged termination. Addison also has failed to demonstrate that East Side breached the covenant of good faith and fair dealing. The Court finds that East Side did not falsify or manipulate documents to create fictitious grounds to terminate Addison. Finally, the Court finds Addison's alleged termination was not in violation of public policy.

**THEREFORE**, Defendant's Motion for Summary Judgment is hereby **GRANTED**. This case is hereby **DISMISSED WITH PREJUDICE**.

**IT IS SO ORDERED.**

/s/ *Mary M. Johnston*
The Honorable Mary M. Johnston

20