# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

IN RE: ASBESTOS LITIGATION    )
    )
JESSE HASTINGS and his wife,    )
DIANE HASTINGS,    )
    )
        Plaintiffs,    )
    )
    v.    )    C.A. No. N15C-06-014 ASB
    )
OWENS-ILLINOIS, INC., *et al.*,    )
    )
        Defendants.    )

Submitted: December 8, 2016
Decided: January 17, 2017

*Upon Defendant RCH Newco II LLC's Motion for Summary Judgment,* **DENIED.**

## ORDER

AND NOW this 17th day of January, 2017, upon consideration of Defendant RCH Newco II LLC ("RCH Newco")'s Motion for Summary Judgment, the response thereto, and the parties' oral arguments, **IT IS HEREBY ORDERED** that the Motion for Summary Judgment is **DENIED** for the following reasons:

1.    Plaintiffs Jesse and Diane Hastings claim that Mr. Hastings contracted colon cancer as a result of his exposure to RCH Newco's asbestos-containing product, Galbestos. RCH Newco, a successor to H.H. Robertson Co., manufactured Galbetsos, which was a protected metal siding and roofing product. Mr. Hastings, the sole product identification witness, testified in two depositions

that his relevant exposure to Galbestos occurred while he was employed as an ironworker and foreman at various Dupont sites from 1951-1969 and in the 1980s.

2.    In Mr. Hastings' first deposition, he testified that he started working at DuPont's Chestnut Run facility in 1951-52.  As an ironworker, he participated in constructing the entire facility.[1]  He initially did not recall working with asbestos products while at the facility, though he recalls being around other trades that may have used asbestos-containing products.[2]  He testified that he was a foreman for some period of time at Chestnut Run and at another DuPont facility, the Experimental Station.[3]  As foreman, he supervised everything his fellow ironworkers did at the site.[4]  "We put in windows. . . .  We installed panels for siding and—we did most everything."[5]  As foreman, he did not perform hands-on work.[6]

3.    Mr. Hastings testified that he came into contact with asbestos-containing products at the DuPont Glasgow Pencader site for a period of six

---

[1] Defendant's Motion at Ex. B, 48 (first deposition transcript).

[2] *See id.* at 49-51.

[3] *See id.* at 51.

[4] *See id.*

[5] *Id.*

[6] *See id.*

months sometime during the 1980s.[7] Asked whether he recalled performing hands-on work as an ironworker, Mr. Hastings stated: "[W]e put a building up in Glasgow. And it had, it had big panels for the outsides of the building, were big panels that were erected. They were like twelve foot tall and two foot wide. And they were insulated panels. So I have no idea whether they were asbestos. . . ."[8] At that time, he couldn't recall who manufactured these panels.[9] He testified that they had difficulty installing these panels because of their size and the site's limitations on their ability to cut the panels.[10] He stated that they did not drill into the panels; instead, they used a type of clip to fasten the panels.[11]

4.     Mr. Hastings testified to working as an ironworker foreman at Lukens Steel in 1985.[12] At Lukens, he worked on the construction of a blast-furnace.[13] Mr. Hastings' work history lists the presence of Galbestos at Lukens, but Mr.

---

[7] *See id.* at 56-59.

[8] *Id.* at 56.

[9] *See id.* at 57. He could not remember the name of any manufacturers of products with which he came into contact in the first depostion. *See id.* at 79.

[10] *See id.* at 58-59.

[11] *See id.* at 59.

[12] *See id.* at 80-81.

[13] *See id.* at 80.

3

Hastings did not identify the manufacturer of any asbestos-containing products at the site.[14]

5. In Mr. Hastings' second deposition a month later, he reiterated that his principal place of employment for 14 years was the Chestnut Run facility starting in the early 1950s.[15] When asked by his counsel whether he associated any products with his time at Chestnut Run, Mr. Hastings responded: "We put aluminum siding on it. I can't think of the name of it now. I don't know. It was a, corrugated siding. It had a coating, kind of brownish-red coating on it. Hmm. Fab, Fabestos or something like that."[16] Counsel interjected, asking: "Galbestos?"[17] Mr. Hastings affirmed, confirming the product's name was "Galbestos."[18] Mr. Hastings then explained that this product was used on temporary storage buildings.[19] "Well, you had to cut it to fit; had to saw it with a, with a power saw to fit the size. And then you put it on with screws, with a screw

---

[14] *See* Defendant's Motion at 5 (citing Defendant's Motion at Ex. C; enclosing Plaintiff's work history).

[15] Defendant's Motion at Ex. E, 33-34 (second deposition transcript).

[16] *Id.* at 35.

[17] *Id.*

[18] *Id.*

[19] *See id.* at 35, 78-79.

gun."[20] Sawing, which took only a "matter of seconds" to complete, would create dust.[21] He reiterated that the Galbestos came in sheets of 12 feet long by 2 feet wide.[22] It was brownish red in color on both sides, rough in texture, and corrugated.[23] Mr. Hastings stated that he never personally cut the siding, but supervised other ironworkers in his role as foreman.[24] He testified that this type of siding work was a "small percentage" when compared to his other tasks.[25]

6.      RCH Newco filed its Motion for Summary Judgment on September 6, 2016, contending that: (1) Mr. Hastings' testimony is internally inconsistent—partially as a result of an impermissible leading question from his lawyer—and does not create a genuine issue of material fact; and (2) absent his inconsistent testimony on Galbestos exposure, he cannot state a valid claim under Delaware law to survive summary judgment on the issue of product nexus. Plaintiff filed a response in opposition to the Motion on October 3, 2016. Defendant filed a reply brief on October 21, 2016. The Court heard oral argument on the Motion on December 8, 2016, at which time the Court reserved ruling. Having considered the

---

[20] *Id.* at 35-36. *See also id.* at 79-80.

[21] *Id.* at 36, 80.

[22] *See id.* at 77-78.

[23] *See id.* at 78.

[24] *See id.* at 80-81.

[25] *Id.* at 85.

parties' filings and oral arguments, as well as the record in this case, the Motion is ripe for decision.

7. The burden of proof on a motion for summary judgment falls on the moving party to demonstrate that "there is no genuine issues as to any material fact and that the moving party is entitled to judgment as a matter of law."[26] If the moving party satisfies its initial burden, the non-moving party must sufficiently establish the "existence of one or more genuine issues of material fact."[27] Summary judgment will not be granted if there is a material fact in dispute or if "it seems desirable to inquire thoroughly into [the facts] in order to clarify the application of the law to the circumstances."[28] "All facts and reasonable inferences must be considered in a light most favorable to the non-moving party."[29]

8. Under Delaware's product nexus standard, the plaintiff is required to "proffer some evidence that not only was a particular defendant's asbestos containing product present at the job site, but also that the plaintiff was in

---

[26] DEL. SUPER. CT. CIV. R. 56(c).

[27] *Quality Elec. Co., Inc. v. E. States Const. Serv., Inc.*, 663 A.2d 488, 1995 WL 379125, at *3-4 (Del. 1995) (TABLE). *See also* Rule 56(e); *Moore v. Sizemore*, 405 A.2d 679, 681 (Del. 1979).

[28] *Ebersole v. Lowengrub*, 180 A.2d 467, 469-70 (Del. 1962).

[29] *Nutt v. A.C. & S. Co., Inc.*, 517 A.2d 690, 692 (Del. Super. 1986) (citing *Mechell v. Palmer*, 343 A.2d 620, 621 (Del. 1975); *Allstate Auto Leasing Co. v. Caldwell*, 394 A.2d 748, 752 (Del. Super. 1978)).

proximity to that product at the time it was being used."[30] This "time and place standard" requires plaintiff show "some evidence" of both "daily and continuous proximity" to defendant's product for more than a *de minimis* period of time.[31]

9.  The Court finds that Mr. Hastings' testimony, though admittedly inconsistent in several material respects, should not be stricken under the reasoning of *Edmisten v. Greyhound Lines, Inc.*[32] In the latter case, the Supreme Court affirmed the grant of summary judgment where two product identification witnesses contradicted one another about the provenance of a particular product relevant to the asbestos claim.[33] The Court held that, where "'plaintiff's testimony is so inconsistent that no reasonable juror could accept it, that testimony will not be credited as raising a genuine issue of material fact to overcome a defendant's summary judgment motion.'"[34]

10.  The Court finds that the case *sub judice* is distinguishable from *Edmisten.* While in *Edmisten* the inconsistency in both witnesses' testimony went to a crucial and distinct issue, *i.e.,* the origination of certain asbestos-containing

---

[30] *Nutt,* 517 A.2d at 692.

[31] *See Collins v. Ashland, Inc.,* 2009 WL 81297 (Del. Super. Jan. 6, 2009) (denying summary judgment on product nexus grounds).

[32] 49 A.3d 1192, 2012 WL 3264925 (Del. Supr. Aug. 13, 2012) (TABLE).

[33] *See id.* at *2 ("The trial court found that Frank Edmisten's inconsistent testimony about his company's purchases of Greyhound buses and parts suggested he did not truly remember those facts, and instead was speculating.").

[34] *Id.* at *2 (quoting *Smith v. Del. State Univ.,* 47 A.3d 472, 477 (Del. 2012)).

parts, Mr. Hastings' testimony simply wavers on his ability to fully recollect certain salient aspects about his exposure to RCH Newco's product. Though his testimony differs in certain significant respects between his first deposition and his last, Mr. Hastings' testimony does not reach the level that no reasonable juror could accept his recollection of his exposure. Rather, any inconsistency in the testimony should be left to the jury to weigh in its role as ultimate arbiter of the facts.[35]

11. Furthermore, the Court finds that the alleged leading question from Plaintiff's counsel—supplying the product's name where Plaintiff recalled "Fabestos"—was not leading, but rather a clarification offered by counsel. "The rule proscribing leading questions on direct examination is grounded in the principle that 'the most important peculiarity of the interrogational system is that it may be misused by *suggestive questions* to supply a false memory for the witness—that is, to suggest desired answers not in truth based upon a real recollection.'"[36] Mr. Hastings appears to have struggled with the precise wording of the product name, Galbestos. Over the course of a long deposition, particularly in cases involving asbestos exposure, such mistakes are reasonable and expected.

---

[35] *See, e.g., Washington v. State*, 4 A.3d 375, 381 (Del. 2010) (quoting *Tyre v. State*, 412 A.2d 326, 330 (Del. 1980)) ("It has long been our law that the jury is the sole judge of the credibility of the witnesses and *responsible for resolving conflicts in the testimony*.").

[36] *Christiana Care Health Servs., Inc. v. Crist*, 956 A.2d 622, 626 (Del. 2008) (quoting 3 WIGMORE, WIGMORE ON EVIDENCE § 769).

As such, Plaintiff's counsel's question in supplying the proper name of the product was a clarification and not an objectionable leading question. Consequently, the Court will consider this testimony along with Mr. Hastings additional testimony on his alleged exposure to Galbestos in both depositions.

12. After a review of Mr. Hastings' testimony, the Court finds that RCH Newco has not met its burden of proving no genuine issues of material fact exist regarding Mr. Hastings' exposure to its product. Plaintiff has presented some evidence that he was exposed to Galbestos for an appreciable period of time at several jobsites as an ironworker and foreman. Though there are inconsistencies in his testimony, those inconsistencies may be addressed at trial since they do not render his testimony so inconsistent that no reasonable juror would accept his testimony.

**IT IS SO ORDERED** that Defendant RCH Newco's Motion for Summary Judgment is **DENIED**.

Judge Vivian L. Medinilla

cc: Original – Prothonotary
All Counsel via File&Serve

9