# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

JEREMIAH CHANCE,     :

       Plaintiff,     :     C.A. No. K18C-01-056 NEP

     :     In and For Kent County

    v.     :

     :

KRAFT HEINZ FOODS COMPANY,     :

       Defendant.     :

## OPINION AND ORDER

Submitted: October 24, 2018
Decided: December 17, 2018

Upon Defendant's Motion to Dismiss
**DENIED** in Part, **GRANTED** in Part

Patrick C. Gallagher, Esquire, Jacobs & Crumplar, P. A., Wilmington, Delaware,
*Attorney for the Plaintiff.*

Jennifer C. Jauffret, Esquire, and Lori A. Brewington, Esquire, Richards, Layton &
Finger, P.A., Wilmington, Delaware,
*Attorneys for the Defendant.*

Thomas R. Chiavetta, Esquire *(pro hac vice)*, Jones Day, Washington, D.C.; and
Benjamin M. Gavel, Esquire *(pro hac vice)*, Jones Day, Cleveland, Ohio,
*Of Counsel for the Defendant.*

Primos, J.

Before the Court is the motion to dismiss of Defendant Kraft Heinz Foods Company (hereinafter "Kraft Heinz") and the response of Plaintiff Jeremiah Chance (hereinafter "Plaintiff"). Plaintiff filed his initial complaint *pro se* on January 30, 2018, regarding his termination of employment from Kraft Heinz. Plaintiff alleged in his original Complaint that he was terminated after testing positive for marijuana in violation of Delaware's Medical Marijuana Act ("DMMA"),[1] and in retaliation for his complaints under the federal Occupational Safety and Health Act ("OSHA").[2] Plaintiff subsequently obtained counsel and filed an Amended Complaint on March 26, 2018, which asserted four Counts arising from his termination: (I) violation of the DMMA; (II) violations of the Americans with Disabilities Act ("ADA"),[3] and the Delaware's Persons with Disabilities Employment Protections Act ("DEPA");[4] (III) violation of Delaware's Whistleblowers' Protection Act ("DWPA");[5] and (IV) common law wrongful termination. Kraft Heinz's motion requests dismissal of all Counts asserted in the Amended Complaint. For the reasons set forth below, Defendant Kraft Heinz's motion is **DENIED** in part and **GRANTED** in part.

## I.  Factual Background and Procedural History

The facts recited are as alleged in Plaintiffs' Amended Complaint.[6] Plaintiff was employed by Kraft Heinz at its facility in Dover, Delaware, from May 2009 to August 2016. This facility contains railroad tracks on its premises. Plaintiff started out as a warehouse employee and was eventually promoted to Yard Equipment Operator. In

---

[1] 16 *Del. C.* § 4901A *et seq.*
[2] 29 U.S.C. § 651 *et seq.*
[3] 42 U.S.C. §§ 12101 *et seq.*
[4] 19 *Del. C.* § 720 *et seq.*
[5] 19 *Del. C.* § 1701 *et seq.*
[6] *Savor, Inc. v. FMR Corp.*, 812 A.2d 894, 896–97 (Del. 2002) (on a motion to dismiss "all well-pleaded factual allegations are accepted as true").

his Amended Complaint, Plaintiff alleges that he suffers from a number of medical ailments of which Kraft Heinz was aware, including various back problems. Plaintiff obtained a medical marijuana card in 2016 for these medical issues and took leave on several occasions through the Family and Medical Leave Act ("FMLA") and by utilizing short-term disability benefits.

On August 9, 2016, Plaintiff submitted an incident report to Kraft Heinz management regarding unsafe conditions of the railroad ties in the railroad yard. The following day, Plaintiff showed Paul Diebel, a maintenance supervisor employed by Kraft Heinz, and two bulk operators the unsafe conditions of the railroad ties as well as other defects. Plaintiff also met with Michael Doughty, the Warehouse Supervisor, and voiced his concern that the unsafe conditions of the railroad tracks violated the United Facilities Criteria (the "UFC"). Doughty responded that Kraft Heinz was not obligated to comply with the UFC. Plaintiff had relied upon the UFC, however, because he had previously requested from Kraft Heinz the standards that applied to the rails but had never been provided them.

Later that day, Plaintiff was operating a "shuttle wagon" on the railroad tracks when it derailed. This prompted Kraft Heinz management to request that Plaintiff undergo a drug test. The test was inconclusive, and Kraft Heinz requested that he submit to another test. On August 12, 2016, Plaintiff underwent a second drug test, and on August 16, 2016 a Medical Review Officer ("MRO") informed Plaintiff that he had tested positive for marijuana. Plaintiff informed the MRO that he possessed a medical marijuana card and provided it to the MRO. On August 25 or 26, 2016, Kraft Heinz terminated Plaintiff for failing the drug test.

Plaintiff subsequently filed a Charge for Discrimination with the Delaware Department of Labor Office of Anti-Discrimination ("DDOL") on October 27, 2016, which was "dual filed" with the Federal Equal Employment Opportunity Commission

("EEOC"). The DDOL issued a right-to-sue letter on September 29, 2017, and the EEOC issued Plaintiff a right-to-sue letter on November 1, 2017. Plaintiff filed his original Complaint within the requisite 90 days on January 30, 2018, and subsequently filed an Amended Complaint on March 26, 2018.

## II. Standard of Review

On a motion to dismiss, the moving party bears the burden of demonstrating that "under no set of facts which could be proven in support of its [complaint] would the [plaintiff] be entitled to relief."[7] Upon this Court's review of a motion to dismiss, "(i) all well-pleaded factual allegations are accepted as true; (ii) even vague allegations are well-pleaded if they give the opposing party notice of the claim; (iii) the Court must draw all reasonable inferences in favor of the non-moving party; and (iv) dismissal is inappropriate unless the plaintiff would not be entitled to recover under any reasonably conceivable set of circumstances susceptible of proof."[8]

## III. Discussion

### A. Count I: Plaintiff's Claims Under the DMMA.

Kraft Heinz argues that federal law preempts the DMMA to the extent that it authorizes the use of marijuana and requires employers to accommodate that use. Kraft Heinz cites to the Supremacy Clause[9] and a handful of cases in other jurisdictions for the proposition that the Controlled Substances Act ("CSA"),[10] under a conflict

---

[7] *Daisy Constr. Co. v. W.B. Venables & Sons, Inc.*, 2000 WL 145818, at *1 (Del. Super. Jan. 14, 2000).

[8] *Savor*, 812 A.2d at 896–97.

[9] U.S. Const. art. VI.

[10] 21 U.S.C. § 801 *et seq.*

preemption analysis,[11] preempts the DMMA and state medical marijuana laws. Plaintiff, in response, argues that this analysis is overbroad and that the CSA does not preempt the specific employment discrimination provisions within the DMMA.

At issue before this Court are two main inquiries: (1) whether the DMMA, and specifically its anti-discrimination provision, is in conflict with the CSA and is thus preempted; and (2) whether a private right of action to enforce its non-discrimination provision is implied in the DMMA.[12] Both of these queries appear to be issues of first impression in Delaware.

### 1. Whether the DMMA is Preempted by the CSA.

In considering whether the anti-discrimination provision of the DMMA is not preempted by the CSA, this Court finds persuasive the decision of the United States District Court for the District of Connecticut in *Noffsinger v. SSC Niantic Operating Co., LLC,*[13] and that of the Rhode Island Superior Court in *Callaghan v. Darlington Fabrics Corp.*[14] This Court further finds that the case law cited by Kraft Heinz is distinguishable from the case at hand.

---

[11] A federal statute may preempt a state law in several ways, including where state law is an obstacle to the objectives of Congress ("obstacle preemption") or where simultaneous compliance with both federal and state law is impossible ("impossibility preemption"). *Noffsinger v. SSC Niantic Operating Co., LLC,* 273 F. Supp. 3d 326, 333 (D. Conn. 2017). These two concepts are often referenced collectively as "conflict preemption." *Callaghan v. Darlington Fabrics Corp.,* 2017 R.I. Super. LEXIS 88, at * 40-42 (R.I. Super. May 23, 2017).

[12] The DMMA does not expressly permit individuals to sue for violations of the non-discrimination provision. Thus, this Court must analyze whether a private right of action is implied within the statute.

[13] 273 F. Supp. 3d 326 (D. Conn. 2017).

[14] 2017 R.I. Super. LEXIS 88 (R.I. Super. May 23, 2017). Unlike most other states that have enacted medical marijuana laws, Delaware is one of only nine states (including Connecticut and Rhode Island) that explicitly bars employers from firing or refusing to hire an employee who uses medical marijuana in compliance with the requirements of state law. The other states besides the three previously mentioned are Arizona, Illinois, Maine, Nevada, New York, and Minnesota. *See Noffsinger,* 273 F. Supp. 3d at 331.

The CSA regulates the possession and use of certain drugs, including marijuana, and states that it is "...unlawful to manufacture, distribute, dispense, or possess any controlled substance except in a manner authorized by the CSA."[15] The CSA classifies marijuana as a Schedule I substance and does not currently allow any exceptions for medical use.[16] The DMMA, in contrast, expressly authorizes the distribution, possession, and use of marijuana for medical purposes.[17] Moreover, as mentioned *supra*, and unlike most other state medical marijuana statutes, the DMMA explicitly prohibits employers from disciplining employees who use marijuana for medical reasons, and who fail drug tests because of it:

> [A]n employer may not discriminate against a person in hiring, termination, or any term or condition of employment...if the discrimination is based upon either of the following: a. The person's status as a cardholder; or b. A registered qualifying patient's positive drug test for marijuana...unless the patient used, possessed, or was impaired by marijuana on the premises of the place of employment or during the hours of employment.[18]

At first glance, it appears that the two statutes are at odds. However, to find preemption in this case would represent an overbroad approach to that issue.[19] While the CSA classifies marijuana as a Schedule I substance and does not currently make exceptions for medical use, it does not make it illegal to employ someone who uses

---

[15] *Gonzales v. Raich*, 545 U.S. 1, 13 (2005).

[16] 21 U.S.C. § 812.

[17] 16 *Del. C.* § 4903A.

[18] 16 *Del. C.* § 4905A(a)(3).

[19] *See Noffsinger*, 273 F. Supp. 3d at 334 (argument that Connecticut medical marijuana statute stands as obstacle to CSA is overbroad because it ignores specific provision at issue, *i.e.*, anti-discrimination provision). This Court must focus upon the DMMA's specific anti-employment discrimination provision rather than the statute as a whole. In preemption cases, "state law is displaced only to the extent that it actually conflicts with federal law [and] a ... court should not extend its invalidation of a statute further than necessary to dispose of the case before it." *Noffsinger*, 273 F. Supp. 3d at 334 (quoting *Dalton v. Little Rock Family Planning Servs.*, 516 U.S. 474, 476 (1996)).

marijuana, nor does it purport to regulate employment matters within this context. In fact, the CSA itself explicitly confirms Congress's intent that the statute not preempt a state law "unless there is a positive conflict between that provision of this subchapter and that State law so that the two cannot consistently stand together."[20]

Therefore, the Court finds that conflict preemption does not apply because the anti-discrimination provisions of the DMMA do not pose an obstacle to the objectives of Congress nor do they render compliance with both federal and state law impossible. The DMMA does not require employers to participate in an illegal activity (the unauthorized manufacture, dissemination, dispensing or possession of controlled substances) but instead merely prohibits them from discriminating based upon medical marijuana use.

Kraft Heinz cites to a number of cases in its opening and reply memoranda for the proposition that the CSA preempts anti-discrimination provisions of the state medical marijuana law and that employers are not required to accommodate employees' state-licensed marijuana use by continuing to employ them after learning of the use via employee disclosure or a failed drug test.[21] Indeed, very few medical marijuana statutes prohibit the discipline or discharge of an employee who uses medical marijuana outside of work and later tests positive on a drug test. Rather, most such statutes lack any clear statutory protections for medical marijuana users' employment, which has led to the dismissal of multiple claims of employees who were discharged based upon their medical marijuana use, even absent evidence that their use

---

[20] 21 U.S.C. § 903. *See also Callaghan*, 2017 R.I. Super. LEXIS 88, at *43-44 (R.I. Super. May 23, 2017) (Congress is aware of state medical marijuana statutes and "has decided to tolerate the tension…between the federal and state regimes.").

[21] *See, e.g., Emerald Steel Fabricators, Inc. v. Bureau of Labor & Indus.*, 230 P.3d 518 (Or. 2010); *Garcia v. Tractor Supply Co.*, 154 F. Supp. 3d 1225 (D.N.M. 2016).

affected their work performance.[22] However, this Court finds the cases cited by Kraft Heinz distinguishable from this case because the statutory provisions at issue in those cases are not analogous to the anti-discrimination provision of the DMMA.[23]

## 2. Whether a Private Right of Action is Implied in the DMMA.

A private right of action may be implied if there is "strong evidence that the legislature intended to create it."[24] Delaware courts traditionally apply a three-factor implied private right of action analysis as first articulated by the U.S. Supreme Court in *Cort v. Ash*.[25] This test analyzes "(1) whether the plaintiff is a member of a class for whose especial benefit the statute was enacted; (2) whether there is any indication of legislative intent to grant or deny a private right of action; and (3) whether recognition of an implied private right of action would advance the statute's purpose."[26] This Court has held that "statutory intent is determinative in a private right of action analysis."[27]

With regard to the first and third prongs of *Cort*, this Court finds that these factors weigh in favor of Plaintiff. Section 4905A prohibits an employer from discriminating "against a person in hiring, termination, or any term or condition of employment, or otherwise penaliz[ing] a person, if the discrimination is based upon

---

[22] *See, e.g., Ross v. RagingWire Telecommc'n, Inc.*, 174 P.3d 200, 208 (Cal. 2008); *Emerald Steel*, 230 P.3d at 535; *Roe v. Teletech Customer Care Mgmt., LLC*, 257 P.3d 586, 591-93 (Wash. 2011).

[23] Notably, as *Noffsinger* notes, the Oregon Supreme Court's decision in *Emerald Steel*, which Kraft Heinz cites repeatedly, is distinguishable, as both the statute at issue in that case, and the question addressed, are at odds with the question presented here, *i.e.*, whether a medical marijuana employment anti-discrimation provision is preempted by the CSA. *Noffsinger*, 273 F. Supp. 3d at 334. Oregon's medical marijuana statute does not contain a specific provision barring employment discrimination and, thus, the Oregon Supreme Court's analysis focused on a broader issue regarding whether the CSA preempted a provision of the Oregon statute that authorized the use of medical marijuana.

[24] *Ray's Plumbing & Heating Serv., Inc. v. Stover Homes, L.L.C.*, 2011 WL 3329384, at *4 (Del. Super. July 26, 2011).

[25] *Cort v. Ash*, 422 U.S. 66, 78 (1975).

[26] *Ray's Plumbing*, 2011 WL 3329384, at *2 (quoting *O'Neill v. Middletown*, 2006 WL 205071, at *16 (Del. Ch. Jan. 18, 2006)).

[27] *Id.* at *4.

either of the following: a. [t]he person's status as a cardholder; or b. [a] registered qualifying patient's positive drug test...."[28] In this case, Plaintiff, as a medical marijuana cardholder, was terminated after failing a drug test. Clearly, Plaintiff falls within the class of persons for whose especial benefit the statute was enacted, as Section 4905A(a)(3) seeks to prohibit discrimination against medical marijuana patients.

The third *Cort* prong examines whether recognition of an implied private right of action would advance the statute's purpose. Section 4901A(g) provides that "[s]tate law should make a distinction between the medical and nonmedical uses of marijuana. Hence, the purpose of this chapter is to protect patients with debilitating medical conditions, as well as their physicians and providers, from arrest and prosecution, criminal *and other penalties,....*"[29] (emphasis added). The Court may reasonably infer that the purpose of the statute is to protect medical marijuana patients from discrimination based upon their status, and from being penalized based upon that discrimination, as with termination from employment. Thus, Plaintiff has met the third prong.

The second *Cort* factor looks to whether there is any indication of legislative intent to grant or deny a private right of action. In this case, the analysis is complicated by the fact that there is no explicit statutory directive. Kraft Heinz fastens upon this point and asserts four main arguments in opposition to finding an implied private right of action: (1) had the legislature wanted to create a private right of action, it could have done so expressly; (2) the DMMA expressly creates a private right of action to enforce some of its provisions, but not its anti-discrimination provision; (3) the DMMA should not be construed liberally; and (4) the legislative history contains no indication of an

---

[28] 16 *Del. C.* § 4905A(a)(3).
[29] 16 *Del. C.* § 4901A(g).

intent to create an implied private right of action. Most, if not all, of these arguments were scrutinized and dismissed in the *Callaghan* case, which, as this Court has already noted, is germane to this discussion. This Court, likewise, does not find these arguments convincing.

First, by way of context, it is important to remember that the Court's duty in interpreting a statute is to find legislative intent and to give effect to it.[30] The Court is required, under settled rules of construction, to read the statute as a whole and to harmonize its parts.[31] "If a literal interpretation leaves a result inconsistent with the general statutory intention, the literal interpretation must give way to the general intent."[32]

Here, the purpose of Section 4901A is to protect individuals with debilitating medical conditions from arrest or prosecution, and from criminal or other penalties. The purpose of Section 4905A is to prohibit employment-related discrimination based upon either status as a medical marijuana cardholder or a qualifying patient's positive drug test. It is a well-settled principle of statutory interpretation that an isolated portion of a statute should not be construed in a vacuum: rather, every word must be given meaning and must be considered in the context of the entire statute.[33]

In the DMMA, no agency or commission has been tasked with enforcement of the anti-discrimination provision. Under Section 4905A(a)(3), no remedy other than a private right of action is available to cardholders and qualifying marijuana patients terminated or discharged from employment for failing drug tests. The fact that an anti-discrimination provision was included in the DMMA demonstrates legislative intent to

---

[30] *Murphy v. Bd. Of Pension Trustees*, 442 A.2d 950, 951 (Del. Super. 1982).
[31] *Id.*
[32] *Georgeopoulos v. State Farm Mut. Auto. Ins. Co.*, 1990 WL 91085, at *2 (Del. Super. June 19, 1990) (*citing Nationwide Mutual Insurance Co. v. Krongold*, 318 A.2d 606, 609 (Del. Super. 1974)).
[33] *Doroshow, Pasquale, Krawitz & Bhaya v. Nanticoke Mem. Hosp., Inc.*, 36 A.3d 336, 344 (Del. 2012).

remedy the problem of discrimination based upon one's cardholder status. Therefore, this Court finds that the language of Section 4905A(a)(3) creates an implied private right of action. Absent a finding of an implied private right of action, Section 4905A would be devoid of any purpose within the broader context of the statute.[34]

In *Callaghan*, the Superior Court of Rhode Island examined the *Cort* factors with regard to finding an implied private right of action under the anti-discrimination provisions of the Rhode Island Medical Marijuana Act.[35] Rhode Island's statute provides that "no...employer...may refuse to...employ...a person solely for his or her status as a cardholder."[36] The court deemed this "rights-creating language" and held that because there were no particular remedies established, the "only...sensible interpretation" of the anti-discrimination provisions of the Rhode Island statute was that there must be "an implied private right of action. Without one, [the provision]...would be meaningless."[37]

With regard to Kraft Heinz's first point that the legislature could have expressly created a private right of action if it had wanted to, the Court does not find this argument persuasive. While it is certainly true that the General Assembly has provided express private remedies in other employment statutes, the General Assembly is also presumed to know how the statute would be interpreted or construed by the courts. The court in *Callaghan* rejected a similar argument, stating that the Rhode Island General Assembly is presumed to possess knowledge regarding "the 'state of existing relevant law when it enacts or amends a statute.'"[38] Thus, the absence of an express right of action cannot

---

[34] *See Noffsinger*, 273 F.Supp.3d at 340 (holding that "without a private cause of action, [the statute in question] would have no practical effect, because the law does not provide for any other enforcement mechanism.").

[35] 2017 R.I. Super. LEXIS 88 (R.I. Super. May 23, 2017).

[36] R.I. Gen. Laws § 21-28.6-4(d).

[37] *Callaghan* at *23.

[38] *Id.* at *18-19.

11

be assumed to preclude an implied private right of action.[39] Here, there is no indication of legislative intent to deny a private cause of action, and the Court finds, as in *Callaghan*, that the Delaware General Assembly knew that the right could be implied. Moreover, this also answers Kraft Heinz's fourth argument: the absence of any legislative history on this issue does not prove that the General Assembly wished to preclude a private right of action.

Kraft Heinz's second argument for not finding an implied private right of action is that the DMMA expressly creates a private right of action to enforce some of its provisions, such as Section 4924A, which authorizes "any citizen" to sue in state court if the Delaware Department of Labor does not comply with its statutory mandate to adopt regulations to implement the DMMA. Because there is no such language in the DMMA's anti-discrimination provision, Kraft Heinz asserts that the legislature did not intend for a private right of action for that provision. This argument, likewise, lacks merit.

"[A] cause of action may be implied where a statute defines an unfair employment practice but does not provide an express method of redress."[40] In another employment case, *Heller v. Dover Warehouse Market, Inc.*,[41] this Court found that an implied private right of action exists under a Delaware law prohibiting employers from requiring submission to polygraph testing. In that case, the plaintiff was an employee accused of theft.[42] Her employer forced her to take a polygraph test despite the statute's prohibition that "[n]o person...shall require...that any employee...take...a polygraph...as a condition of...continuation of employment."[43] This Court, in analyzing the statute, found that the provision of a criminal penalty in the statute did

---

[39] *Id.*

[40] *Callaghan* at *19 (quoting 45B Am. Jur. 2d Job Discrimination § 1843 (2012)).

[41] 515 A.2d 178 (Del. Super. 1986).

[42] *Id.* at 180.

[43] 19 *Del. C.* § 704.

not exclude the possibility of a civil remedy.[44] The statute was found to have a dual purpose - - assuring that employees are not subjected to polygraph testing, and penalizing employers that require such testing.[45] The court concluded that the General Assembly must have intended a private right of action to accomplish that dual purpose, given that "[r]edress for damages is not assured unless a private right of action is implied under the statute."[46]

Similarly, in *Callaway v. N.B. Downing Co.*,[47] this Court found an implied private right of action when examining the state's minimum wage law. That statute made it illegal to pay less than the minimum wage and set criminal penalties for violations, but did not include any provisions regarding civil remedies.[48] The Court found that one of the primary purposes of the statute was to provide employees the right to a minimum wage, and therefore that the General Assembly would have intended an implied right of action because the General Assembly would not have established a right "without a corresponding remedy."[49]

Section 4901A clarifies the DMMA's purpose of protecting individuals with debilitating medical conditions from arrest or prosecution and from criminal or other penalties. However, just as in *Heller* and *Callaway*, there is no remedy in the DMMA's anti-discrimination provision for damages caused by the prohibited discrimination. Although a criminal sanction against the employer might deter future violations, it would provide little by way of remedy to an employee who was discharged. In fact, without an implied private right of action, Plaintiff, like the employees in *Heller* and *Callaway*, would have no other recourse.

---

[44] *Heller*, 515 A.2d at 180.
[45] *Id.* at 180-81.
[46] *Id.* at 181.
[47] 172 A.2d 260 (Del. Super. 1961).
[48] 29 *Del. C.* § 6913 (1953).
[49] 172 A.2d at 262-63.

In short, while the fact that the General Assembly authorized a private right of action in Section 4924A may serve as some evidence that a private right of action was not intended in Section 4905A(a)(3), the Court finds that the other arguments supporting the provision of an implied private right of action by the General Assembly outweigh such evidence.

The Court also finds Kraft Heinz's third argument unconvincing. The fact that the DMMA does not state that it is to be construed liberally does not establish that this is so. Statutes prohibiting discrimination are generally deemed remedial, and Delaware law is clear that remedial statues are granted a liberal construction.[50]

Upon a careful review of the briefings and case law provided by counsel, the Court finds the case at hand distinguishable from Kraft Heinz's cited case law, notably *Ray's Plumbing.* In *Ray's Plumbing,* this Court found that the plaintiff, as a subcontractor, had access to alternative civil remedies such as breach of trust, breach of contract, and fraud.[51] In this case, by contract - - as in *Heller* and *Callaway* - - a private right of action is the only means of effectuating the statute's remedial purpose.

## B. Count II: Plaintiff's Claims Under the ADA and the DEPA.

Kraft Heinz next moves to dismiss Plaintiff's claims of violations of the ADA and the DEPA as untimely. Federal and Delaware law requires that a plaintiff file a disability discrimination claim within 90 days of receiving right-to-sue notices from

---

[50] *See Gomez-Perez v. Potter,* 553 U.S. 474, 481 (2008) (referring to anti-discrimination statutes as "remedial"); *Sheehan v. Oblates of St. Francis de Sales,* 15 A.3d 1247, 1256 (Del. 2011) (under Delaware law, remedial statutes to be construed liberally).

[51] 2011 WL 3329384 at *4. *See also Mann v. Oppenheimer & Co.,* 517 A.2d 1056 (Del. 1986) (in addition to fact that General Assembly did not expressly authorize private right of action, other relevant factors, such as whether plaintiffs were members of a class for whose benefit the statute was created, argued against finding a private right of action).

the agencies responsible for investigating a discrimination charge (in this case both the EEOC and DDOL).[52] Failure to abide by this time frame will bar a claim.[53]

In this case, Plaintiff filed his initial complaint *pro se* within the 90-day time period. However, the initial complaint alleged violations of the DMMA as well as retaliation under OSHA, and did not include disability discrimination claims under the ADA or the DEPA. These claims were not brought before the Court until Plaintiff subsequently obtained counsel and filed an Amended Complaint on March 26, 2018.

Cognizant of the difficulties faced by *pro se* plaintiffs, this Court holds a *pro se* plaintiff's complaint to a less demanding standard of review.[54] However, "there is no different set of rules for *pro se* plaintiffs,"[55] and the Court's leniency cannot go so far as to affect the substantive rights of the parties.[56] Thus, the question before the Court is whether the Amended Complaint's assertion of violations of the ADA and the DEPA raises a new theory of liability that was not set forth in the original complaint, or whether this theory arises out of the same transaction or occurrence so as to relate back to the original complaint, which was timely filed.

"An amendment of a pleading relates back to the date of the original pleading when...the claim...asserted in the amended pleading arose out of the conduct,

---

[52] *See* 42 U.S.C. § 12117(a) *and* 42 U.S.C. § 2000e-5(f)(1) (requiring ADA claims to be brought within 90 days of receiving the EEOC's right-to-sue notice); 19 *Del. C.* § 714(b) (requiring DEPA claims to be filed within 90 days of receiving either the EEOC or DDOL's right-to-sue notice, whichever is later).

[53] *See Figueroa v. Buccaneer Hotel Inc.*, 188 F. 3d 172, 176 (3d Cir. 1999) ("[A] claim filed even one day beyond this ninety-day window is untimely and may be dismissed....").

[54] *Anderson v. Tingle*, 2011 WL 3654531, at *2 (Del. Super. Aug. 15, 2011).

[55] *Draper v. Med. Ctr. of Del.*, 767 A.2d 796, 799 (Del. 2001).

[56] *Anderson*, 2011 WL 3654531, at *2. To the extent Plaintiff argues for a more lenient standard of review with regard to alleging his disability discrimination claims, the Court is not convinced and finds that his status as a *pro se* litigant does not excuse his failure to bring the disability discrimination claims in the original complaint, particularly when it appears that Plaintiff knew how to assert such claims to the EEOC. *Cf. Thompson v. Brandywine School Dist.*, 478 F. App'x 718, 720 (3d Cir. 2012) (claim of discrimination based upon race did not relate back to earlier complaint of discrimination based on nationality and religion).

transaction or occurrence set forth or attempted to be set forth in the original pleading."[57] In order for an amendment to relate back, there must be "fair notice of the general fact situation out of which the claim or defense arose."[58] Relation back is improper when the new claim(s) present a new and independent theory of liability based upon independent facts that were not set forth in the original complaint.[59]

Here, the Court finds that Plaintiff's disability discrimination claims do not relate back to his initial complaint. The Court also finds that Plaintiff's original complaint failed to plead sufficient facts so as to put Kraft Heinz on notice of the general fact situation out of which the disability discrimination claims arose.

Plaintiff argues that his original complaint pled facts adequately alleging disability discrimination. Plaintiff's original complaint alleges that Kraft Heinz violated the DMMA and retaliated against Plaintiff for reporting safety issues. Subsection B of the original complaint states that "[w]hile filling out the paperwork for the drug test, Plaintiff inquired about how to fill out the paperwork considering his medical marijuana prescription." The original complaint also alleges that Plaintiff needed to take multiple drug tests. Thus, Kraft Heinz knew that Plaintiff possessed a medical marijuana card, which Plaintiff argues is sufficient to establish a nexus between the allegations in the original complaint and those of the Amended Complaint.

Plaintiff argues that in order to be a cardholder under the DMMA, an individual must be deemed a "qualifying patient," which means that he or she must have "been diagnosed by a physician as having a debilitating medical condition."[60] Plaintiff alleges that because Kraft Heinz knew that he possessed a medical marijuana card, it

---

[57] Sup. Ct. Civ. R. 15(c)(2).

[58] *Mullen v. Alarmguard of Delmarva, Inc.*, 625 A.2d 258, 264 (Del. 1993).

[59] *Moore ex rel. Moore v. Emeigh*, 935 A.2d 256, at *2 (Del. 2007) (TABLE); *see also Thompson*, 478 F. App'x at 720 (race discrimination claims did not relate back to earlier discrimination claims filed within 90-day period).

[60] 16 *Del. C.* §§ 4902A(1) & (13).

was aware that Plaintiff had been diagnosed with a "debilitating disease" by a physician. Additionally, Plaintiff alleges that Kraft Heinz knew that he had used significant portions of his FMLA and short-term disability benefits over the years. Thus, Plaintiff's primary argument for why relation back is proper in this case is that he was a cardholder under the DMMA and, consequently, that Kraft Heinz knew or should have known that he was a person "disabled" for purposes of the ADA and the DEPA. This argument is tenuous and lacks merit for several reasons.

As a preliminary matter, the Court notes that Plaintiff has cited to no legal authority for the proposition that status as a Delaware medical marijuana cardholder equates to possessing a "disability" within the confines of the ADA or the DEPA. The Court notes that the ADA defines an individual with a disability as a person "who has a physical or mental impairment that substantially limits one or more major life activities, has a record of such impairment, or is regarded as having such an impairment."[61] Notably, the DMMA does not include a definition of "disability". Rather, Plaintiff attempts to analogize to a "disability" by referencing the definition for a "debilitating medical condition," which includes "[a] chronic or debilitating disease or medical condition...."[62] These two definitions, while similar, are not identical. Moreover, while it is certainly possible that an individual with a disability under the ADA may also be a "qualifying patient" under the DMMA, the Court will not simply infer this correlation or assume that someone is an individual with a disability under the ADA or DEPA merely because that individual holds a medical marijuana card.

Additionally, even assuming arguendo that Plaintiff's status as a "qualifying patient" under the DMMA necessarily classified him as an individual with a "disability" under the ADA and the DEPA, there is nothing in Plaintiff's original

---

[61] 42 U.S.C. § 12102(2). The definition of "person with a disability" in the DEPA is nearly identical. 19 *Del. C.* § 722 (4).
[62] 16 *Del. C.* §§ 4902A(3)(b).

complaint to indicate that Kraft Heinz terminated Plaintiff's employment due to his "disability". Thus, Kraft Heinz cannot be found to have been on notice regarding potential disability discrimination claims. Rather, the original complaint alleges that Kraft Heinz terminated Plaintiff because he failed a drug test for medical marijuana use, and that it retaliated against Plaintiff for reporting safety issues. The Amended Complaint, conversely, alleges that Plaintiff suffers from hand, wrist, and back problems that render him "disabled" and that Kraft Heinz terminated his employment based on his "disability" in violation of the ADA and the DEPA.

Although the Court must accept all "well-pleaded" allegations as true for purposes of a Rule 12(b)(6) motion to dismiss, the Court will "ignore conclusory allegations that lack specific supporting factual allegations."[63] In this case, even reviewing Plaintiff's *pro se* complaint under the "less stringent standard," it nonetheless lacks well-pleaded allegations that would provide a sufficient legal or factual basis on which Plaintiff may recover from Kraft Heinz for disability discrimination. In making this determination, the Court relies upon the analysis laid out by the Delaware Supreme Court in *Moore v. Emeigh*.[64] In that case, the Supreme Court affirmed the trial court's discretionary decision that a claim of negligence against the defendant for failing to inspect constituted a new claim that did not relate back to a claim of vicarious negligence pled in the original complaint.[65] In so holding, the Supreme Court found that the new claim was not based upon facts contained in the original complaint.[66] Here, as in *Moore*, the Court finds that the new claims of disability discrimination are not based upon facts contained in the original complaint,

---

[63] *Ramunno v. Cawley,* 705 A.2d 1029, 1034 (Del. 1998) (citation omitted).
[64] 935 A.2d 256 (Del. 2007) (TABLE).
[65] *Id.* at *2.
[66] *Id.*

which alleges only discrimination for medical marijuana use and retaliation under OSHA, and Count II is therefore dismissed.

### C. Count III: Plaintiff's Claims Under the DWPA.

Kraft Heinz next asserts that Plaintiff did not engage in "protected conduct" under the DWPA, as the Amended Complaint fails to allege any specific violations of law, and fails to allege that Plaintiff reported any such violations to management. For the reasons outlined below, Plaintiff's claim of a violation of the DWPA will survive Kraft Heinz's 12(b)(6) motion to dismiss; however, should Plaintiff be unable to discover evidence to support his allegation, this claim is subject to resolution in Kraft Heinz's favor at the summary judgment phase.

The DWPA acts to protect "employees who report violations of the law for the benefit of the public," as well as to "provide[ ] a check on persons in positions of authority, by ensuring that they do not take retaliatory action against subordinates who disclose misconduct."[67] The DWPA prohibits an employer from discharging or otherwise discriminating against an employee for reporting a "violation" to the employer or to the employee's supervisor, which he/she "knows or reasonably believes has occurred or is about to occur."[68] A "violation" is "an act or omission by an employer...that is...[m]aterially inconsistent with, and a serious deviation from, standards implemented pursuant to a law, rule, or regulation promulgated under the laws of this State...."[69]

The elements for a *prima facie* case of a violation of the DWPA are as follows: (1) the employee engaged in a protected whistleblowing activity; (2) the accused official knew of the protected activity; (3) the employee suffered an adverse

---

[67] *Smith v. Delaware State University*, 47 A.3d 472, 476 (Del. 2012).
[68] 19 *Del. C.* § 1703(1) and (4).
[69] 19 *Del. C.* § 1702(6).

employment action; and (4) there is a causal connection between the whistleblowing activity and the adverse action.[70]

Kraft Heinz argues that Plaintiff's DWPA count must be dismissed, as Plaintiff fails to plead facts showing which law, rule or regulation he believed had been violated in connection with the unsafe conditions of the railroad ties, and that whether Plaintiff *reasonably believed* the conduct was violative is irrelevant.[71] Additionally, Kraft Heinz argues that even if Plaintiff had identified some specific law, rule, or regulation that was violated, Plaintiff did not allege ever reporting it to management.

Plaintiff, in response, argues that an actual "violation" need not be alleged in order to seek relief under the statute. Rather, pursuant to *Kelsall v. Bayhealth, Inc.*,[72] there need not be an actual violation pled, as long as the reporting employee "reasonably believes" a violation has occurred or is about to occur.[73] Additionally, according to Plaintiff, the Amended Complaint alleges that he did report the illegal conditions to management on several occasions via multiple verbal complaints and his incident report, as well as showing one of his supervisors the defects in the rails.

The Court will address Kraft Heinz's latter argument first regarding Plaintiff's alleged failure to report a "violation" to management, and may easily dispose of this argument. In the Amended Complaint, Plaintiff pled that he made Kraft Heinz management aware of the lack of safety of the rails on multiple occasions and informed management that he believed the rails were in violation of the law. This may be

---

[70] *Addision v. East Side Charter School of Wilmington, Inc.*, 2014 WL 4724895, at *3 (Del. Super. Sept. 19, 2014).

[71] *See Hanzer v. Nat'l Mentor Healthcare, LLC*, 2014 WL 1390889, at *6 (D. Del. 2014) (denying DWPA claim as the plaintiff "failed to point to any statute, rule or regulation" that the employer's conduct violated. "Whether [plaintiff] believed such conduct was violative is irrelevant to the analysis as the statute requires the violation to be based on a rule, regulation or law."); *see also Smith*, 47 A.3d at 476 ("The [DWPA] protect[s] employees who report violations of law....").

[72] 2015 WL 9312477 (Del. Super. Dec. 18, 2015).

[73] *Id.* at *2 (citing 19 *Del. C.* § 1703(4)).

evidenced by the fact that Plaintiff submitted an incident report to Kraft Heinz management[74] regarding the unsafe conditions of the railroad ties because he believed that the ties did not comply with the UFC standards. Additionally, Plaintiff alleges that he had asked for the guidelines or rules that applied to the rails but was never provided them.

Turning to Kraft Heinz's first argument, the primary inquiry for this Court is whether a plaintiff must identify some applicable law, rule, or regulation allegedly violated, or whether a "reasonable belief" of a law's being violated or about to be violated is sufficient. Plaintiff does not dispute that his Amended Complaint does not identify any concrete "violation" of the law within the meaning of the DWPA.[75] Rather, Plaintiff argues that there "does not have to be an actual violation, as long as the reporting employee 'reasonably believes' a violation has occurred or is about to occur."[76] Plaintiff cites to this court's opinion in *Kelsall* for this proposition. However, *Kelsall* simply held that a plaintiff's claim could survive a motion to dismiss if the plaintiff was alleged to have "reasonably believed" that a violation had occurred.[77] *Kelsall* did not address whether liability could ultimately be based upon conduct that did not constitute a violation.

The Court finds the United States District Court for the District of Delaware's decision in *Hanzer v. National Mentor Healthcare, LLC,*[78] instructive on this issue. In *Hanzer*, the DWPA was interpreted to require an employee to report a violation of law.

---

[74] Plaintiff pleads that he submitted an incident report to Kraft Heinz management; that he showed maintenance supervisor Paul Diebel the defects in the rails; and that he subsequently met with Michael Doughty, the warehouse supervisor, to again voice his concerns about the railroad ties.

[75] Plaintiff has alleged that the condition of the rails violates the UFC standards as well as other laws, rules, or regulations; however, Plaintiff does not specifically state what other laws or regulations he is referencing.

[76] *See* 19 *Del. C. § 1703(3).

[77] *Id.* at *2.

[78] 2014 WL 1390889 (D. Del. 2014).

The court held that *Hanzer's* DWPA claim could not survive summary judgment because she could not identify a law, rule or regulation that was or that would have been violated, and that the statute "requires the violation to be based on a rule, regulation or law."[79] While the DWPA allows for the possibility that the reporting employee may be uncertain, at the time he or she reports the conduct, of the specific law, rule, or regulation that has been violated, or even that there is a law, rule, or regulation applicable to the reported conduct, DWPA liability cannot be based upon reported conduct that does not ultimately turn out to be a violation, and to the extent that *Kelsall* can be construed as holding otherwise, this Court declines to follow it.

Therefore, the Court finds that dismissal at this early stage would be inappropriate when Plaintiff has alleged that the condition of the rails violates the UFC standards and when Plaintiff has not had the opportunity to conduct discovery or support his allegation as to whether the condition of the rail ties did, in fact, constitute a "violation" under state or federal law. Plaintiff's allegations must be accepted as true until such time as the factual record is more developed.[80] While the Court finds *Hanzer* persuasive, *Hanzer* involved a plaintiff's failure to identify a statute, rule, or regulation *at the summary judgment stage.* Here, Plaintiff should be allowed to move to discovery and gather facts to support his claim, particularly insofar as Plaintiff has alleged that he asked for the guidelines or rules that apply to the rails and was not provided them. However, should Plaintiff be unable to discover evidence to support his allegation that the condition of the rails constituted a "violation" - - that is, an actual deviation from a specific law, rule or regulation - - this claim is subject to resolution in Kraft Heinz's favor at the summary judgment phase.

---

[79] *Id.* at *5-6.
[80] *Ferguson v. Wesley Coll., Inc.*, 2000 WL 706833, at *2 (Del. Super. Mar. 23, 2000).

22

### D. Count IV: Plaintiff's Claims for Common Law Wrongful Discharge

Lastly, Kraft Heinz moves to dismiss Plaintiff's claim for wrongful termination on the basis that the DMMA and OSHA do not provide any public policy grounds for relief. Kraft Heinz asserts that the DMMA is preempted by the CSA and that OSHA has its own remedial scheme. In response, Plaintiff argues that Delaware law recognizes an implied covenant of good faith and fair dealing that allows him to recover under both statutes.

In general, an at-will employee may be discharged by his/her employer at any time without cause. However, the Delaware Supreme Court has implemented certain protections for at-will employees through recognition of a limited covenant of good faith and fair dealing implicit in every employment contract.[81] These protections have been delineated in four categories by the Delaware Supreme Court in *E.I. DuPont de Nemours and Co. v. Pressman*, one of which is where the termination violated public policy.[82] In *Pressman*, the Delaware Supreme Court held that a plaintiff must satisfy a two-part test in order to establish a breach of the covenant of good faith and fair dealing under the public policy category: "(i) the employee must assert a public interest recognized by some legislative, administrative or judicial authority and (ii) the employee must occupy a position with responsibility for advancing or sustaining that particular interest."[83]

---

[81] *Merrill v. Crothall-American, Inc.*, 606 A.2d 96, 101 (Del. 1992). Various other jurisdictions have also recognized wrongful discharge as a separate claim where the reason for discharge violates public policy. For example, the Supreme Court of New Jersey held that a claim for wrongful discharge will lie where the employer violates a "clear mandate of public policy" and directed courts to examine "legislation, administrative rules, regulations or decisions, and judicial decisions" as potential sources of public policy. *Pierce v. Ortho Pharmaceutical Corp.*, 417 A.2d 505, 512 (N.J. 1980).

[82] *E.I. DuPont de Nemours and Co. v. Pressman*, 679 A.2d 436 (Del. 1996).

[83] *Id.* at 441-42; *see also Lord v. Souder*, 748 A.2d 393, 401 (Del. 2000); *Shearin v. E.F. Hutton Group, Inc.*, 652 A.2d 578, 587-88 (Del. Ch. 1994).

Looking first to Plaintiff's public policy wrongful termination claim under the DMMA, this Court does not find Plaintiff's argument persuasive that as a medical marijuana cardholder he is innately tasked with "responsibility for advancing or sustaining that particular interest." Plaintiff has asserted that the DMMA's anti-discrimination provisions establish a public interest in protecting medical marijuana patients from discrimination by employers. Moreover, Plaintiff alleges that as a medical marijuana patient, the DMMA's anti-discrimination provisions provide him with the ability to combat the discrimination himself. In support of this argument, Plaintiff cites to the Delaware Supreme Court's decision in *Schuster v. Derocili*,[84] where the Court held that an employee could maintain a claim for wrongful termination based upon a public policy against sexual harassment.[85]

In order to determine whether Plaintiff occupies a position with responsibility for advancing a public interest, the Court must look to the nature of Plaintiff's job functions. Here, Plaintiff worked as a warehouse employee and then as Yard Equipment Operator. While Plaintiff has certainly alleged public safety responsibilities, the Court does not find that he has adequately pled whether or how he was responsible for ensuring Kraft Heinz's compliance with the DMMA.

The Court finds the *Schuster* decision distinguishable. There, the plaintiff apparently did not occupy a job position that required her to oversee the implementation of, or be involved in the enforcement of, laws prohibiting the sexual harassment that she allegedly experienced. Nonetheless, the Delaware Supreme Court found that as a purported victim of sexual harassment in the workplace, she occupied a position with responsibility for advancing or sustaining the interest of preventing sexual harassment in the workplace.[86] However, in reaching this conclusion, the Court

---

[84] 775 A.2d 1029 (Del. 2001), *superseded by statute*, 19 *Del. C.* § 712(b).
[85] *Id.* at 1039-40.
[86] 775 A.2d at 1039.

was careful to note the "unique procedural and factual scenario" of the case.[87] The Court further observed that the Court's holding that a claim for breach of the implied covenant arising from a termination allegedly resulting from a refusal to condone sexual advances "flow[ed] directly from Delaware's clear and firmly rooted public policy to deter, prevent and punish sexual harassment in the workplace" and that recognizing such a unique common law cause of action "provides employees with an important weapon to advance Delaware's policy to assure civilized conduct in the workplace."[88] Finally, the Court noted that sexual harassment is a "systemic social problem" and therefore that "[p]reventing it is of immense social value" and thereby promotes Delaware's public policy. By contrast, this Court does not find that the public policy against discrimination toward medical marijuana cardholders is so "firmly rooted," and addresses such a "systemic social problem," that allowing a purported victim of such discrimination to pursue a common law wrongful termination claim based upon it would be appropriate.[89] Thus, this claim is dismissed.

With regard to Plaintiff's wrongful termination claim under OSHA, the Court finds that Plaintiff satisfies the two-part test as laid out in *Pressman*. OSHA prohibits an employer from discharging or discriminating against any employee who exercises "any right afforded by" that law. Section 11(c)(1) provides that "[n]o person shall discharge or in any manner discriminate against any employee because such employee

---

[87] *Id.* at 1034.

[88] *Id.* at 1036, 1039.

[89] The Court finds the analysis in *Noffsinger* pertinent to this point. In *Noffsinger*, the United States District Court for the District of Connecticut held that Connecticut's Palliative Use of Marijuana Act (PUMA), which, as mentioned *supra*, is similar to the DMMA in its anti-discrimination provision, is not preempted by the CSA and does contain an implied private right of action. However, the court dismissed the plaintiff's public policy claim, stating that "if a statute already provides a private right of action intended to vindicate the relevant public policy, the [public policy] claim will fail." *Id.* at 341 (quoting *Groth v. Grove Hill Med. Or., P.C.*, 2015 WL 4393020, at *9 (D. Conn. 2015)). Here, this Court has already found that a private right of action exists under the DMMA.

has filed any complaint or instituted or caused to be instituted any proceeding under or related to this Act...."[90]

In this case, Kraft Heinz argues that OSHA cannot support Plaintiff's wrongful discharge claim because the law has its own enforcement mechanisms for remedying retaliation.[91] Kraft Heinz cites to a number of cases outside this jurisdiction, as well as to the Delaware Superior Court's decision in *Nelson v. JAED Corp., Inc.*, for the proposition that "[w]here a statutory framework is already in place to address wrongful conduct, [Delaware courts are] reluctant to expand the public policy exception to the employment at will doctrine."[92] However, Delaware case law, particularly with regard to OSHA, is not well-developed in this area, and this Court has not found any binding authority stating that OSHA does not provide any public policy grounds for relief.[93] Indeed, the plaintiff in *Nelson* alleged that his termination was in violation of the public policy behind the Delaware Wage and Collection Payment Act.[94] This is wholly different from alleging a violation of public policy under OSHA.

In *Nelson*, the Court stated "[t]here is no provision in the Wage Act authorizing a private right of action for statutory penalties. Nor are there any Delaware cases awarding civil penalties to an employee or suggesting that such an award is feasible

---

[90] 29 U.S.C. § 660(c).

[91] *Id.* In particular, Kraft Heinz asserts that an individual who believes that his or her employer has disciplined him or her in retaliation for reporting a safety concern may file a complaint with OSHA. *See* 29 U.S.C. § 660(c)(2).

[92] *Nelson v. JAED Corp.*, 2013 WL 1092200, at *8 (Del. Super. Jan. 23, 2013).

[93] The closest authority the Court could find on point is *Paolella v. Browning-Ferris, Inc.*, 973 F.Supp. 508 (E.D. P.A. 1997), *aff'd*, 158 F.3d 183 (3d Cir. 1998), discussed in more detail below. In that case, the United States District Court for the Eastern District of Pennsylvania and the United States Court of Appeals for the Third Circuit both applied Delaware law in holding that whistleblowing employees were entitled to protection under the public policy exception to the employment-at-will doctrine. Admittedly, this case is not binding on the Court and is merely persuasive authority.

[94] *Id.* at *8; 19 *Del. C.* §§ 1112(b) and 1113.

under the Wage Act."[95] This Court is not persuaded, however, that similar concerns preclude a claim for breach of the covenant of good faith and fair dealing related to OSHA, as long as the requirements recognized by the *Pressman* court are met.[96]

In holding that Plaintiff's claim for wrongful termination under OSHA may survive Kraft Heinz's motion to dismiss, the Court finds persuasive the decisions of the United States District Court for the Eastern District of Pennsylvania and the United States Court of Appeals for the Third Circuit in *Paolella v. Browning-Ferris, Inc.*,[97] as well as the Supreme Court of Connecticut's decision in *Sheets v. Teddy's Frosted Foods, Inc.*[98]

In *Paolella*, the United States District Court for the Eastern District of Pennsylvania examined Delaware law to determine whether whistleblowing employees were entitled to protection under the public policy exception. In that case, a former employee brought a wrongful discharge claim against his employer under Delaware law, alleging that he has been terminated for complaining about illegal billing practices. The District Court, based upon the analysis laid out in *Pressman*, held that Delaware courts would extend the protection of the public policy exception to an employee who "blew the whistle" on the employer's illegal conduct.[99] The United States Court of Appeals for the Third Circuit, in applying Delaware law and upholding the District

---

[95] *Nelson*, 2013 WL 1092200, at *8.

[96] Like the *Nelson* Court, this Court in *Ayres v. Jacobs & Crumplar, P.A.*, held that "it would be counter-productive to recognize a broader common law exception to the at-will doctrine when there exist elaborate statutory schemes at both the federal and state levels that address this same public policy concern." 1996 WL 769331, at *12 (Del. Super. Dec. 31, 1996). However, the issue in *Ayres* was that of racial discrimination. Thus, the Court found that "[s]ince both the federal and state governments have enacted statutory procedures for dealing with the type of racial discrimination alleged by Ayres, it seems neither desirable nor wise to upset the balance deliberately created by the federal and state anti-discrimination statutes as they have been construed." *Id.* The Court finds this case wholly inapplicable to the case at hand.

[97] 973 F.Supp. 508 (E.D. P.A. 1997), *aff'd by* 158 F.3d 183 (3d Cir. 1998).

[98] 427 A.2d 385 (Conn. 1980).

[99] *Paolella*, 973 F.Supp. at 512.

Court's findings, held that a wrongful discharge action under the public policy exception may be maintained in Delaware and that the employee in that case could meet the two *Pressman* factors. The Court of Appeals went on to hold that (1) the employee's complaints, namely that his employer's billing scheme was illegally designed to defraud customers, asserted a public interested recognized by some legislative, administrative, or judicial authority; and (2) as a sales manager who was responsible for negotiating service contracts, billing customers, and handling customer complaints, the employee had responsibility for the employer's billing practices.[100]

Similarly, in *Sheetz*, the Supreme Court of Connecticut examined "whether to permit a cause of action for wrongful discharge where the discharge contravenes a clear mandate of public policy."[101] The plaintiff in that case, a Quality Control Director and Operations Manager at a frozen food products company, had alleged that he was discharged because of his conduct in notifying his employer about repeated violations of the Connecticut Uniform Food, Drug, and Cosmetic Act, specifically deviations from the employer's own standards, as well as pointing out false labels. This Act, which prohibits the sale of mislabeled food, contains criminal penalties and sanctions, but makes no mention of any private right of action.[102] The court, in permitting a cause of action for wrongful discharge, found that the plaintiff's unique position within the organization may have exposed him to criminal prosecution under the Act and that the Act was intended to "safeguard the public health and promote the public welfare."[103] Thus, it may be inferred that the plaintiff in that case, like Plaintiff here, must have asserted a public interest and occupied a position with responsibility for that interest.[104]

---

[100] *Paolella*, 158 F.3d at 191-92.

[101] *Sheetz*, 427 A.2d at 386.

[102] *Id.* at 388.

[103] *Id.*

[104] *Cf. Geary v. United States Steel Corp.*, 319 A.2d 174 (Pa. 1974). In *Geary*, a salesman at a steel company, believing the sale of a product to be unsafe, protested its sale to his immediate supervisors

28

Plaintiff has asserted in his Amended Complaint that he started out at Kraft Heinz as a warehouse employee and was eventually promoted to Yard Equipment Operator. Moreover, Plaintiff has pled that as Yard Equipment Operator, he is a safety representative and must ensure that everything operates safely and smoothly. Because of Plaintiff's unique position at Kraft Heinz and because Plaintiff has adequately asserted that he was concerned about the safety of the railroad ties and other aspects of the railroad tracks, the Court finds that Plaintiff may make out a colorable claim under *Pressman*. At this stage, on Kraft Heinz's Motion to Dismiss, the allegations of retaliation in the Amended Complaint must be recognized as leaving open the possibility that Plaintiff could present evidence sufficient to prove a breach of the covenant of good faith and fair dealing, based upon the fact that he submitted an incident report and alleged unsafe conditions of the railroad ties to management. Since there are facts sufficient to raise the possibility that Plaintiff might prevail, he is entitled to survive a motion to dismiss and offer evidence in support of such claims.[105]

**WHEREFORE**, for the foregoing reasons, Defendant Kraft Heinz's Motion to Dismiss is **DENIED** in part and **GRANTED** in part as follows:

Defendant's Motion is **DENIED** as to Count I of the Amended Complaint;

Defendant's Motion is **GRANTED** as to Count II of the Amended Complaint;

Defendant's Motion is **DENIED** as to Count III of the Amended Complaint;

---

and to senior corporate officers. The salesman was ultimately fired for not following orders. The Pennsylvania Supreme Court refused to afford the salesman any relief under a wrongful discharge theory, holding that the plaintiff's duties as an employee did not extend to matters of product safety and, thus, no clear public policy concern was implicated in his discharge.
[105] *See In Re: Burlington Coat Factory, S.E.C. Litigation*, 114 F.3d 1410, 1420 (3d Cir. 1997).

Defendant's Motion is **GRANTED** as to Plaintiff's common law wrongful termination claim based upon his status as a medical marijuana cardholder as set forth in Count IV of the Amended Complaint; and

Defendant's Motion is **DENIED** as to Plaintiff's common law wrongful termination claim based upon retaliation for Plaintiff's complaints of safety concerns pursuant to OSHA as set forth in Count IV of the Amended Complaint.

**IT IS SO ORDERED.**

/s/ Noel Eason Primos
Judge

NEP/wjs
*Sent via File & ServeXpress*
oc:    Prothonotary
        Counsel of Record
        file