# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

|  |  |  |
|---|---|---|
| US DOMINION, INC., DOMINION VOTING SYSTEMS, INC., and DOMINION VOTING SYSTEMS CORPORATION, | ) ) ) ) ) | C.A. No.: N21C-08-063 EMD |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| NEWSMAX MEDIA, INC., | ) ) | |
| Defendant. | ) ) | |

Submitted: December 16, 2024
Decided: January 16, 2025

*Decision on Choice of Law*

Brian E. Farnan, Esquire, Michael J. Farnan, Esquire, Farnan LLP, Wilmington, Delaware; Rodney Smolla, Esquire, South Royalton, Vermont; Stephen Shackelford, Jr., Esquire, Mark Hatch-Miller, Esquire, Zach Savage, Esquire, Christina Dieckmann, Esquire, Eve Levin, Esquire, Susman Godfrey LLP, New York, New York; Davida Brook, Esquire, Susman Godfrey LLP, Los Angeles, California; Jonathan Ross, Esquire, Mary Kathryn Sammons, Esquire, Laranda Walker, Esquire, Elizabeth Hadaway, Esquire, Susman Godfrey LLP, Houston, Texas; Edgar Sargent, Esquire, Katherine Peaslee, Esquire, Susman Godfrey LLP, Seattle, Washington. *Attorneys for Plaintiffs US Dominion, Inc., Dominion Voting Systems, Inc., and Dominion Voting Systems Corporation.*

C. Barr Flinn, Esquire, Kevin A. Guerke, Esquire, Timothy E. Lengkeek, Esquire, Lauren Dunkle Fortunato, Esquire, Michael A. Laukaitis II, Esquire, Young Conaway Stargatt & Taylor, LLP, Wilmington, Delaware; Howard M. Cooper, Esquire, Joseph M. Cacace, Esquire, Josh L. Launer, Esquire, Maria A. Lombardi, Esquire, Todd & Weld LLP, Boston, Massachusetts; Douglas D. Herrmann, Esquire, Troutman Pepper Hamilton Sanders LLP, Wilmington, Delaware; Mia S. Marko, Esquire, Troutman Pepper Hamilton Sanders LLP, Philadelphia, Pennsylvania; Bennet J. Moskowitz, Esquire, Troutman Pepper Hamilton Sanders LLP, New York, New York; Michael E. Olney, Esquire, Newsmax Media, Inc., New York, New York. *Attorneys for Defendant Newsmax Media, Inc.*

**DAVIS, J.**

# I. INTRODUCTION

This is a civil action involving a defamation claim. Plaintiffs US Dominion, Inc., Dominion Voting Systems, Inc. and Dominion Voting Systems Corporation (collectively "Dominion") allege that Defendant Newsmax Media Inc. ("Newsmax") published false and defamatory statements of fact about Dominion. Dominion claims that Newsmax's hosts intentionally provided a platform for guests that Newsmax knew would make such statements on the air. In addition, Dominion contends that Newsmax affirmed, endorsed, repeated, agreed with, and repeated those guests false and defamatory statements on the air, on Newsmax's websites, on Newsmax's social media accounts, and on Newsmax's other digital platforms and subscription services. Through its complaint (the "Complaint"), Dominion seeks punitive and economic damages for defamation *per se*.[1]

The issue before the Court is the choice-of-law applicable to this civil action involving a defamation claim in which Dominion alleges that Newsmax published false and defamatory statements about Dominion relating to Dominion's role in the 2020 United States Presidential Election (the "Election").[2] The parties intend to move for summary judgment pursuant to Superior Court Civil Rule 56.[3]

The Court requested that the parties brief the matter of choice-of-law before filing dispositive motions.[4] Both Dominion and Newsmax filed their briefs on November 1, 2024.[5] In their briefs, Dominion argues that the law of New York applies;[6] and Newsmax contends that

---

[1] *See* Plaintiffs' Complaint ("Compl.") (D.I. No. 1).
[2] *See id.*
[3] *See* Defendant Newsmax Media, Inc.'s Opening Brief on Choice of Law ("Def. Br.") at 5 (D.I. No. 417).
[4] *See* D.I. No. 411.
[5] *See* D.I. Nos. 417, 418.
[6] *See* Plaintiffs' Opening Brief in Support of the Application of the Substantive Law of New York ("Pl. Br.") (D.I. No. 418).

Colorado law is applicable.[7]  The Court heard oral argument on the issue on Monday, December 16, 2024.  At the conclusion of the hearing, the Court took the choice-of-law issue under advisement.

For the reasons stated below, the Court holds that the substantive law of Colorado will apply to this action.

## II.    BACKGROUND

### A. THE PARTIES

#### 1.  Plaintiffs

US Dominion, Inc. is a Delaware corporation with its principal place of business in Denver, Colorado.[8]  Dominion Voting Systems, Inc. is a Delaware corporation with its principal place of business in Denver, Colorado, and has maintained an office in New York since July 2009.[9]  Dominion Voting Systems Corporation is an Ontario, Canada corporation with its principal place of business in Toronto, Ontario.[10]  Dominion Voting Systems, Inc. and Dominion Voting Systems Corporation are wholly owned subsidiaries of US Dominion, Inc.[11]

#### 2.  Defendant

Newsmax is a Delaware corporation with its principal place of business in Boca Raton, Florida.[12]  Newsmax operates a television news channel, the website www.newsmax.com, mobile applications for smartphones, and various social media accounts, including a YouTube

---

[7] See Def. Br.
[8] See Compl. ¶ 11; see also Pl. Br. at 1.
[9] See Compl. ¶ 12; see also Pl. Br. at 1.
[10] See Compl. ¶ 13; see also Pl. Br. at 1-2.
[11] See Compl. ¶¶ 12, 13.
[12] See Pl. Br. at 2; see also Def. Br. at 3.

channel.[13]  "Newsmax maintains physical broadcast and production studios in Boca Raton, FL, New York, NY, and Washington, D.C., … but broadcasts news nationwide."[14]

## B.  THE ALLEGED DEFAMATORY CONDUCT

Dominion alleges that in the wake of the 2020 Presidential Election, Newsmax engaged in a defamatory campaign against Dominion.  Newsmax's campaign comprised a series of eighteen statements made on Newsmax television news channel and one social media post.[15]

## III.    PARTIES' CONTENTIONS

### A.  PLAINTIFFS

Dominion argues that its principal place of business is relevant to a choice-of-law analysis, but not determinative.  Dominion contends that New York has the most significant relationship to the dispute under the Restatement (Second) of Conflict of Laws (the "Restatement").[16]  As such, Dominion maintains that New York law should apply.[17]

### B.  DEFENDANT

Newsmax argues that Colorado law applies to this dispute under the presumption set forth in the Restatement because Dominion's principal place of business is there and Newsmax published its at-issue statements there.[18]  Newsmax also contends that Dominion cannot overcome this presumption because any additional choice-of-law factors, to the extent that they are relevant, only confirm that Colorado law applies.[19]

---

[13] *See* Compl. ¶ 14; *see also* Def. Br. at 3.
[14] Def. Br. at 3.
[15] *See* Compl. ¶ 248.
[16] *See* Pl. Br. at 8.
[17] *See id.* at 9.
[18] *See* Def. Br. at 14.
[19] *See id.* at 15.

## IV. STANDARD OF REVIEW

In Delaware, the Court must address "three threshold elements" to a choice-of-law analysis.[20] The threshold elements are: (i) determining if the parties made an effective choice of law through a contract; (ii) if not, determining if there is an actual conflict between the laws of the different state laws at issue; and (iii) if so, analyzing which state has the most significant relationship to the disputed issue.[21]

No contract is at issue here. So, the Court must next determine "whether a conflict truly exists, comparing the competing jurisdictions to determine whether the laws actually conflict on a relevant point. In determining whether there is an actual conflict, Delaware state courts answer a single and simple inquiry: does application of the competing laws yield the same result?"[22] If the answer is no—i.e., there is an actual conflict., the Court then turns to the "most significant relationship" test set out in the Restatement to determine the choice of law.[23]

"When determining which state's law applies to a tort involving multistate defamation, Restatement § 150 applies."[24] Restatement § 150 states in relevant part:

> (1) The rights and liabilities that arise from a defamatory matter … on broadcast over … television … are determined by the local law of the state which, with respect to the particular issue, has the most significant relationship to the occurrence and the parties under the principles stated in [Restatement] § 6.
> …
> (3) When a corporation … claims to have been defamed by an aggregate communication, the state of most significant relationship will usually be the state where the corporation … had its principal place of business at the time, if the matter complained of was published in that state.[25]

---

[20] *Travelers Indem. Co. v. CNH Indus. Am., LLC*, 191 A.3d 288 (Table), 2018 WL 3434562, at *3 (Del. July 16, 2018).

[21] *Id.*

[22] *In re CVS Opioid Ins. Litig.*, 301 A.3d 1194, 1209 (Del. Super. 2023), *as corrected* (Sept. 14, 2023) (internal citations and quotations omitted).

[23] *Schmidt v. Wash. Newspaper Publ'g Co., LLC*, 2019 WL 4785560, at *2 (Del. Super. Sept. 30, 2019) (citing *Smith v. Delaware State Univ.*, 47 A.3d 472, 480 (Del. 2012)).

[24] *Id.* (citation omitted).

[25] Restatement (Second) of Conflict of Laws § 150 (1971) (the "Restatement").

"Aggregate communications" are "communications published simultaneously in two or more states."[26]  Comment *f* to Restatement § 150 states:

> Determination of which is the state of the applicable law is more difficult when the defamer's act or acts of communication are done in a state other than that of plaintiff's principal place of business and when the matter complained of is published in the state of the plaintiff's principal place of business and in one or more other states to which the plaintiff has a substantial relationship.  In this last situation, the local law of the state of the plaintiff's principal place of business will be applied unless, with respect to the particular issue, some other state has a more significant relationship to the occurrence and the parties.[27]

Comment *b* to Restatement § 150 notes that the plaintiff's principal place of business is preferred because it "furthers the choice-of-law values of certainty, predictability and uniformity of result and of ease in the determination and application of the applicable law."[28]  Comment *b* also notes that any factor should be considered "in the light of the choice-of-law principles stated in § 6."[29]  The principles set out in § 6 of the Restatement are:

(a) the needs of the interstate and international systems,

(b) the relevant policies of the forum,

(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,

(d) the protection of justified expectations,

(e) the basic policies underlying the particular field of law,

(f) certainty, predictability and uniformity of result, and

(g) ease in the determination and application of the law to be applied.[30]

---

[26] *Schmidt*, 2019 WL 4785560, at *2 (citing *Aoki v. Benihana, Inc.*, 839 F. Supp. 2d 759, 765 (D. Del. 2012)).
[27] Restatement § 150, cmt. f.
[28] Restatement § 150, cmt. b.
[29] *Id.*
[30] Restatement § 6.

In short, Restatement § 150 "creates a presumption that the law of the state where a plaintiff resides applies unless there are 'significantly sufficient considerations'" under the Restatement to overcome that presumption.[31]  Comment *f* to Restatement § 150 provides two main factors:

> Other contacts that the forum will consider in determining which is the state of most significant relationship with respect to the particular issue include (a) the state or states where the defendant did his act or acts of communication, such as assembling, printing and distributing a magazine or book and (b) the state or states of the defendant's domicile, incorporation or organization and principal place of business.[32]

Comment *f* to the Restatement also notes that the state where the plaintiff suffered the "greatest injury" to their reputation may have the most significant relationship when considering the following:

> (a) the plaintiff is better known in this state than in the state of his domicil[e], or (b) the matter claimed to be defamatory related to an activity of the plaintiff that is principally located in this state, or (c) the plaintiff suffered greater special damages in this state than in the state of his domicil[e], or (d) the place of principal circulation of the matter claimed to be defamatory was in this state.[33]

The Court must weigh all these factors and presumptions in light of the policy interests in § 6 of the Restatement.[34]  As articulated by the Supreme Court, the choice-of-law analysis should ensure "certainty, predictability and uniformity of results."[35]

---

[31] *Schmidt*, 2019 WL 4785560, at *3 (quoting *Aoki*, 839 F. Supp. 2d at 766).
[32] *Id.*
[33] Restatement § 150, cmt. f.
[34] *CNH Indus. Am., LLC*, 2018 WL 3434562, at *5.
[35] *Id.*

## V. DISCUSSION

### A. A CHOICE-OF-LAW ANALYSIS IS NECESSARY BECAUSE AN ACTUAL CONFLICT OF LAW EXISTS

Dominion and Newsmax agree that an actual conflict exists between New York and Colorado law—*i.e.*, the application of New York or Colorado law could yield different results.[36] Purportedly, New York and Colorado defamation law differ because: (i) Colorado recognizes a public concern privilege that is not cognizable under New York law; (ii) New York has a statutory fair report privilege and Colorado's fair report privilege is not codified by statute; (iii) Colorado law provides for the mitigation of damages as an affirmative defense, but New York law does not; and (iv) Colorado imposes statutory limitations on punitive damages awards that are absent in New York law.[37]

Accordingly, the Court finds that the conflict in law between New York and Colorado necessitates a choice-of-law analysis.

### B. THE SUBSTANTIVE LAWS OF COLORADO APPLY TO THIS ACTION

#### 1. *Dominion cannot overcome the Restatement's presumption that Colorado law should govern this dispute.*

Dominion argues that its principal place of business is not determinative, but rather, it is only one factor of many that the Restatement offers to determine choice-of-law.[38] Dominion also contends that this factor should be given less weight than would be given in a "typical" defamation case because (i) its business is nationwide, and (ii) "Colorado is *not* the principal place of business for one of the three plaintiffs. … Though having two out of three plaintiffs

---

[36] *See* Pl. Br. at 8; *see also* Def. Br. at 7.
[37] *See* Pl. Br. at 9.
[38] *Id.*

8

headquartered in Colorado weighs somewhat in favor of the application of Colorado's law, it is not determinative."[39]

Dominion also contends that Newsmax misstates the Restatement, creating a "nearly irrebuttable" presumption where one does not exist: "The Restatement does not create a 'presumption' but rather states that the principal place of business will be the 'most important contact' in applying the 'significant relationship test.'"[40] Dominion points to Comment *f* to Restatement § 150 and urges the Court to consider other factors beyond Dominion's principal place of business.[41]

Newsmax opposes, contending that Colorado law applies to this dispute under the presumption set forth in the Restatement because Dominion's principal place of business is there and Newsmax published its at-issue statements there.[42] "This case is therefore the exact situation in which the presumption applies, and there is no need for the Court to go any further. The Court should accordingly end its choice of law inquiry here and hold that Colorado law applies."[43]

Newsmax responds to Dominion's argument that its principal place of business should be given less weight in this case because Dominion's business is nationwide: "A plaintiff's primary place of business does not receive 'less weight' merely because the plaintiff conducts business in more than one jurisdiction. Delaware courts apply the law of a plaintiff's primary place of business even when plaintiff's business is trans- or international."[44] Newsmax also disputes Dominion's claim that Colorado is not the principal place of business for one out of three plaintiffs, Dominion Voting Systems Corporation. Newsmax notes that "[Dominion] admits that

---

[39] *Id.*
[40] *See* Plaintiffs' Response in Support of the Application of the Substantive Law of New York ("Pl. Reply") at 1-2 (D.I. No. 442).
[41] *See id.* at 3.
[42] *See* Def. Br. at 14.
[43] *Id.* at 15.
[44] *See* Defendant Newsmax Media, Inc.'s Reply Brief on Choice of Law ("Def. Reply") at 2 (D.I. No. 441).

9

Dominion Voting Systems Corporation is a 'wholly owned subsidiary of US Dominion, Inc.,' whose principal place of business is Denver, Colorado."[45]

As discussed above, the Restatement creates a presumption that the law of the state where a plaintiff's principal place of business applies unless there are significantly sufficient considerations warranting the application of the law of a different state. Delaware courts follow the Restatement. The Court finds that, considering all factors, there are not sufficient considerations that would warrant the application of New York law here. Summarized, those factors are:

(1) State of publication;

(2) State of defendant's domicile, incorporation, or organization and principal place of business;

(3) State of plaintiff's greatest injury, if, in that state as compared to plaintiff's domicile:

    a. Plaintiff is better known, or
    b. The alleged defamation concerns plaintiff's activities principally located there; or
    c. Plaintiff suffered greater special damages; or
    d. It is where the alleged defamatory matter was principally circulated.

Therefore, because the Restatement's presumption is not overcome, Colorado law should apply. Each factor is discussed in detail below.

### a. The state of most of the publications is New York.

Dominion asserts that the "overwhelming bulk" of Newsmax's alleged defamatory acts occurred in New York:[46] "Of the eighteen broadcasts, no fewer than sixteen were broadcast, published, produced, or otherwise emanated from New York."[47] Dominion provides the following to argue that "the vast majority of the 'acts of communication' in this suit occurred in

---

[45] *Id.* at 5.
[46] *See* Pl. Br. at 11, 14.
[47] *Id.* at 3.

10

New York, including the production, filming, and broadcasting of most of the defamatory publications at issue:"[48]

- *Greg Kelly Reports*, a Newsmax show that aired six accused statements … more than any other show—was shot and wholly produced in New York.
  …
- *American Agenda* aired two separate accused statements. … The show was shot and produced entirely in New York ….
  …
- *Wake Up America* aired one accused broadcast. … The show was shot and produced entirely in New York.
  …
- *National Report* aired two accused broadcasts. … *National Report* was shot and produced entirely in New York.
  …
- *John Bachman Now* aired one accused broadcast. … Host John Bachman filmed in Florida, but the producer directly responsible for the accused segment produced it from New York.
  …
- *Stinchfield*, which aired two accused broadcasts, … while generally filmed in Texas, was produced in New York, where its production staff and control room was based.
  …
- *The Chris Salcedo Show*, on which one defamatory broadcast aired, … while generally filmed in Texas at host Chris Salcedo's home studio, was entirely produced from New York, where the production staff was based.
  …
- *The Count*, on which one accused broadcast aired, … was produced in New York.[49]

Further, Dominion maintains that "courts routinely find that the state in which the acts of communication occurred outweighs the jurisdictional home of the plaintiff …."[50] Dominion cites *Ramsey v. Fox News Network, LLC,* a Colorado case where the federal court applied Colorado law to a dispute where, "among other things, the media defendant's employees who

---

[48] *Id.* at 11.
[49] *Id.* at 3-6.
[50] *Id.* at 12 (citing *Ramsey v. Fox News Network, LLC*, 351 F. Supp. 2d 1145, 1149 (D. Colo. 2005)).

'developed' the allegedly defamatory content 'lived and worked in Colorado,' rather than Georgia, where the plaintiffs were domiciled."[51]  Dominion also cites *Kinsey v. New York Times Co.*, where the court applied New York law because "the state from which a media defendant's publication 'emanated' predominated over the plaintiff's domicile … and that the former state therefore had the 'most significant relationship' to the case."[52]

Newsmax disagrees with Dominion's representation that a majority of the alleged defamatory acts occurred in New York.[53]  Newsmax contends that its acts of communication were "broadcast from, recorded in, or produced in multiple jurisdictions" including Florida, New York, Texas, Washington, D.C., Massachusetts, and Connecticut.[54]  Newsmax provides the following to argue that "at least half" of the at-issue acts occurred in states other than New York:[55]

- Newsmax CEO and Chief Editorial Officer Chris Ruddy had final editorial authority over all Newsmax programs, and he is domiciled in Florida.
  …
- As for the ten shows that aired allegedly defamatory statements, Newsmax has pointed out that they were produced, recorded, and prepared for distribution in multiple states, including Florida, New York, Texas, Washington D.C., and Connecticut, and were broadcast nationwide.
  …
- Every single show was routed to and prepared for delivery to cable and satellite systems by a third-party company in Connecticut.
  …
- Three shows were recorded in Florida (*John Bachman Now*, *The Howie Carr Show*, one episode of *The Count*), one in D.C. (*The Benny Report*), and two in Texas (*The Chris Salcedo Show PM*, *Stinchfield*).
  …

---

[51] *Id.*
[52] *Id.* at 13 (citing *Kinsey v. New York Times Co.*, 991 F.3d 171 (2d Cir. 2021)).
[53] *See* Def. Reply at 5, 7.
[54] *Id.* at 16.
[55] *See id.* at 5, 7.

- Two shows were produced in Florida (*John Bachman Now*, *The Howie Carr Show*), one in D.C. (*The Benny Report*), and two in Texas and New York together (*The Chris Salcedo Show PM*, *Stinchfield*).

  …

- Newsmax's primary control room for the whole network is in Florida.[56]

Newsmax also contends that Dominion's reliance on *Ramsey* is misplaced.[57] Newsmax contends that the court in *Ramsey* "chose Colorado over Georgia, where plaintiffs had moved, because '[t]his is primarily a Colorado case, with a Georgia connection that is at best, now tenuous.'"[58] Here, Newsmax argues that the parties' ties to New York are, "at best, now tenuous," because the allegedly defamatory acts "largely took place outside of New York."[59]

Finally, Newsmax highlights that it broadcasts nationwide, and that Dominion alleges it suffered reputational harm nationwide.[60] Newsmax cites *Aoki v. Benihana*: "[W]hen there is widespread dissemination of allegedly defamatory matter … the most important consideration in choosing the applicable law is the residence of the party allegedly defamed …."[61] Thus, Newsmax asserts that the choice-of-law determination must be based on Dominion's principal place of business.[62]

The Court finds that, based on the parties' representations, this factor mostly favors New York. However, on balance, this factor is not enough to override the Restatement's presumption that the plaintiff's principal place of business remains the most important consideration.

---

[56] *Id.* at 7-9.
[57] *See id.* at 9.
[58] *Id.*
[59] *Id.* at 10.
[60] *See id.* at 16 (referencing Compl. ¶ 229).
[61] *See id.* at 13 (quoting *Aoki*, 839 F. Supp. at 765).
[62] *See id.* at 17.

***b.  The state of Newsmax's domicile, incorporation, or organization and principal place of business is a neutral factor because it favors neither New York nor Colorado.***

Dominion does not contest that Newsmax is domiciled in Florida.[63]  Neither party is arguing that Florida law applies.  Therefore, this factor is neutral and does not negate the Restatement's presumption that Colorado law should apply.

***c.  The site of Dominion's greatest injury is a neutral factor because it favors neither New York nor Colorado.***

Comment *f* to Restatement § 150 posits a general rule that the state where the plaintiff suffered the "greatest injury" to their reputation may have the most significant relationship.

Dominion argues that the general rule is not applicable in this case.[64]  "As a voting-machine technology company serving many U.S. jurisdictions, Dominion's business is *not* localized to the immediate area of its principal place of business.  Rather, its business is nationwide."[65]

At the same time, Dominion maintains that the site of its greatest injury is New York, stating the following:

> Dominion's expert witness, Mark Hosfield, will testify that lost revenue related to Dominion's customers in New York that either terminated their contracts before expiration or switched to a competitor when the contract was up for renewal totals $22,056,662, … representing more than 20 separate counties that terminated or switched to a competitor (losses as to which Newsmax's defamation was a substantial factor).  By comparison, in Colorado, Dominion's lost revenue to date is $139,955, flowing from the loss of a single county.[66]

Newsmax contends that "any reputational injury to Dominion would have significant impact in Colorado" because Colorado remains Dominion's headquarters, employing about fifty

---

[63] *See* Compl. ¶ 14 (stating Newsmax "was formed in and is organized under the laws of Delaware and has its principal place of business in West Palm Beach, Florida.").
[64] *See* Pl. Br. at 10.
[65] *Id.*
[66] *Id.* at 15.

people.[67]  Newsmax also insists that Dominion's New York presence is smaller with Dominion employing only five to ten people in the state.[68]  Accordingly, Newsmax suggests that "the brunt of any reputational or other harm from the alleged defamation would thus be felt disproportionately in Colorado, not New York."[69]

Also, Newsmax disagrees with Dominion's argument that New York is the state where Dominion suffered the *greatest* injury to its reputation, as required by the Restatement.[70] Newsmax contends that "all but a small fraction of Dominion's damages were suffered outside of New York."[71]  Newsmax argues that Dominion's argument is rebutted by Dominion's own expert, Mark Hosfield:

> Mr. Hosfield opines that $22 million in alleged lost New York revenue is equivalent to approximately $6.75 million out of a total of $91.456 million in alleged discounted lost profits. … But Hosfield opines that Dominion's total damages is $1,818,315,737. … That means New York accounts for just 7.4% of Dominion's lost profits and *less than 0.4%* of Dominion's alleged total damages.[72]

Finally, Newsmax argues that "Dominion's pleadings and interrogatory responses also reflect the insignificance of Dominion's alleged New York damages."[73]  First, Newsmax highlights that the Complaint does not specifically allege harm in New York; rather, the Complaint "alleges 'harm nationwide,' including in 'California, Colorado, Florida, Michigan, Ohio and Pennsylvania,' and describes examples from Louisiana, California, and Georgia. … New York is absent."[74]  Second, Newsmax notes that Dominion failed to provide any evidence of damages in New York during discovery; rather, "Dominion did not identify any damages from

---

[67] *See* Def. Reply at 2-3.
[68] *See id.* at 4.
[69] *Id.*
[70] *See id.* at 11 (emphasis supplied).
[71] *Id.* at 10.
[72] *Id.* at 11-12 (emphasis supplied).
[73] *Id.* at 13.
[74] *Id.*

15

New York until June 27, 2024, nearly three years after the complaint was filed."[75]  Newsmax states that on November 17, 2023, in response to Interrogatory 23, Dominion provided Newsmax with an itemization of "lost revenue from 60 jurisdictions. … New York did not appear on Dominion's list at all, even though the Hosfield Expert Report now alleges that Dominion had by that date lost $9,693,905 in revenue from New York."[76]

The Court finds this factor to be neutral in the analysis.  Dominion is claiming international injury; thus, neither Colorado nor New York holds more significance than any other location where Dominion alleges to have been injured.  In other words, given the facts provided by the parties, neither state can be the site of the *greatest* (*i.e.*, most significant) injury in a choice-of-law analysis, as required by the Restatement.  Because this factor is neutral, it does not negate the presumption that Colorado law should apply.

### 2. *Applying Colorado law furthers the choice-of-law values expressed in the Restatement.*

Comment *b* to Restatement § 150 notes that the plaintiff's principal place of business is preferred because it "furthers the choice-of-law values of certainty, predictability and uniformity of result and of ease in the determination and application of the applicable law."[77]

Dominion proffers that New York, "as the media capital of the world," has a strong policy interest in favor of applying its own defamation law to media entities broadcasting from New York.[78]  Dominion also argues that New York has the stronger policy interest because "New York has codified by statute several of the defamation defenses Newsmax advances here …."[79]  Dominion discusses two of Newsmax's defenses: (i) the fair report privilege, and (ii) that

---

[75] *See id.*
[76] *Id.*
[77] Restatement § 150, cmt. b.
[78] Pl. Br. at 16.
[79] *Id.*

16

Newsmax's damages, if any, should be reduced because of the *Dominion Voting Systems v. Fox News Network* settlement.[80]

First, Dominion highlights that New York has a statutory fair report privilege, but Colorado's fair report privilege is not codified by statute.[81]

Second, Dominion points out that Newsmax has pled that its damages, if any, should be reduced in whole or in part because of Dominion's prior settlement with Fox, pursuant to Colo. Rev. Stat. § 13-50.5-105, or in the alternative, under N.Y. Civil Rights Law § 76.[82] However, Dominion argues that Colorado has no particular policy interest relevant to this dispute because "[t]here are strong reasons to doubt that [the Colorado] statute applies at all to defamation actions, and no Colorado court has addressed the issue."[83] Also, because the Fox case was governed by New York law, Dominion argues that it follows that New York "has an interest in any possibility of allocation of legal responsibility among multiple broadcasters for similar but distinct statements, the vast majority of which emanated from New York."[84]

Newsmax argues that Colorado has the greatest interest in applying its law in this case because under Restatement § 150(3), a corporation's principal place of business is usually the place where its reputation is most affected.[85] "As Dominion's home state, Colorado 'has the greatest concern in vindicating [Dominion's] good name and providing compensation for harm caused by the [allegedly] defamatory publication.'"[86]

Newsmax relies upon Restatement § 150 Comment *b* to argue that using Dominion's principal place of business "furthers the choice-of-law values of certainty, predictability and

---

[80] *See id.* at 16-17.
[81] *See id.*
[82] *See id*. at 17; *see also* Answer at 257-258.
[83] Pl. Br. at 17.
[84] *Id.*
[85] *See* Def. Br. at 17.
[86] *See id.* (quoting *Wilson v. Slatalla*, 970 F. Supp. 405, 414 (E.D. Pa. 1997)).

uniformity of result and of ease in the determination and application of the applicable law."[87]

Newsmax points out that in *Smartmatic USA Corp. v. Newsmax Media, Inc.*,[88] the Court held that

Florida, the plaintiffs' principal place of business, substantive law applied: "During the parties'

hearing on their choice-of-law briefing, the Court observed that in 'in situations involving the

multi-state publication of matters that injure[ ] the plaintiff's reputation … his principal place of

business, is the single most important contact for determining the state of the applicable

law[.]'"[89]

In response, Dominion argues that Newsmax's reliance on the Court's choice-of-law

decision in *Smartmatic* is misplaced because there are "significant differences between the

choice-of-law analysis in this case and in *Smartmatic*."[90] Specifically, Dominion states,

"Dominion (unlike Smartmatic) does do business in New York, and Dominion (unlike

Smartmatic) has both alleged and marshaled evidence of profound harms and eight-figure special

damages it suffered in New York that exceed those in other states whose law potentially

applies."[91]

The Court finds that applying Colorado law furthers the choice-of-law values expressed

in the Restatement. Delaware law does not endorse making choice-of-law determinations based

on the defenses raised in a case, as opposed to looking at the entire action as a cohesive whole.

The Supreme Court addressed the issue in *Bell Helicopter Textron, Inc. v. Arteaga*:

> [W]e note that it generally makes no logical sense to apply different laws to these
> elements in the same case. To do so risks subjecting litigants to a law of the case
> that is not the law of any jurisdiction, but is instead an eclectic blend of various
> sovereigns' laws crafted by a judge into a bespoke tort law fitted for a particular
> case. As a practical matter, the factors underlying the respective choice of law

---

[87] *Id.* (referencing Restatement § 150, cmt. b.).
[88] *Smartmatic USA Corp. v. Newsmax Media, Inc.*, 2024 WL 4165101.
[89] *See* Def. Br. at 18 (quoting the transcript of *Smartmatic's* Choice of Law Hearing on May 8, 2024, at 8:13-20).
[90] *See* Pl. Reply at 7.
[91] *Id.*

18

determinations are identical. … Only extraordinary circumstances should justify unraveling the connections between the duties defendants owe and the remedies afforded to plaintiffs in the event of a tort.[92]

Even if the Court agrees that Newsmax's affirmative defenses somehow added more weight to this factor, the other factors considered by the Court still support applying Colorado law. Though Delaware courts allow a choice-of-law analysis to be parsed by issue,[93] this case involves a single cause of action for defamation. Affording New York more significance by virtue of Newsmax's defenses ignores the guidance provided by the Restatement and creates a "bespoke tort law" unpermitted by Delaware courts.

## VI.    CONCLUSION

The Restatement creates a presumption in favor of the state of the plaintiff's principal place of business. This presumption can be rebutted if another state has a more significant relationship to the action. Considering all factors, New York does not fit that description. Therefore, the substantive law of Colorado should govern the adjudication of this dispute in Delaware.

**IT IS SO ORDERED**

January 16, 2025
Wilmington, Delaware

/s/ Eric M. Davis
Eric M. Davis, Judge

cc:    File&ServeXpress

---

[92] *Bell Helicopter Textron, Inc. v. Arteaga*, 113 A.3d 1045, 1052 (Del. 2015).
[93] *See Whitwell v. Archmere Acad., Inc.*, 463 F. Supp. 2d 482, 485 (D. Del. 2006) (quoting *Pittman v. Maldania, Inc.*, 2001 WL 1221704, at *3 (Del. Super. July 31, 2001)) "Dépeçage is the process of deciding choice of law on an issue by issue basis, with the result that the law of one state may be determined to apply to one issue and the law of a different state to another issue in the same case. … [I]t has been 'tacitly embraced' by Delaware trial courts."